PATTERSON (LANHAM v.). See Case No. 8,069.

PATTERSON (LEE v.). See Case No. 8,198.

## Case No. 10,828.

### PATTERSON v. McLAUGHLIN et al.

[1 Cranch, C. C. 352.] [1]

Circuit Court, District of Columbia. Dec. 17, 1806.

NE EXEAT—ADMINISTRATRIX ABOUT TO REMOVE—FOREIGN SURETY—GOODS OF INTESTATE—RESIDENT DEBTOR.

1. A ne exeat will be granted to restrain an administratrix from removing from this district with the effects of the deceased, before final settlement of her administration account, if her sureties reside out of the district;—but it will not be granted against her surety, a citizen of Maryland, who happens to be found here.

2. The goods of an intestate cannot be attached by his creditors, nor will a chancery attachment lie against the effects of a resident debtor.

[Cited in brief in Loewenstein v. Biernbaum, Case No. 8,461a.]

In chancery. This was a motion [by Benjamin Patterson] to discharge the ne exeat and certain chancery attachments, and for restoration of certain goods delivered by Holliday & Allen, to the marshal, under the condition of the order for a ne exeat. The bill states that Charles McLaughlin, late of Georgetown, deceased, was indebted to the plaintiff in nine hundred and ninety-two dollars and upwards, which sum yet remains due and unpaid. That the defendant Peggy McLaughlin, obtained letters of administration on his estate, from the orphans' court, in the county of Washington, in this district. That Joshua Barney and Joseph Young, both of Baltimore, in the state of Maryland, are her sureties for the faithful administration of the estate; and that she has given no security whatever, within the District of Columbia. That she is about to remove herself from the said district and to settle in the state of Maryland. That the complainant has reason to believe she has fraudulently concealed and embezzled a great quantity of goods and chattels of the decedent to a great value;—and that to defraud the creditors, she and the defendant, Barney, without suffering those goods to be inventoried and appraised, but concealing them from the view of the apprais-

[1] [Reported by William Cranch, Chief Judge.]

ers, employed a vessel, owned by one Robert Holliday, of Maryland, and of which William Allen is master, to convey the concealed and embezzled goods out of this district, into Maryland. That the goods are now on board the vessel, on the river Potomac, sailing on the voyage to Havre de Grace, or Baltimore, and transporting thither for the private gain of the administratrix and of the defendant, Barney. That so secret have been their proceedings, that it is impossible for any of the creditors to know certainly, or to bring proof in a court of law as to the quantity and value of the said goods, nor of what particular articles they consist, without the interposition of this court for a discovery thereof. That unless the said goods can be subjected to examination and detention, under the orders of this court, for the purpose of being applied to the satisfaction of the complainant and other creditors of the deceased, they will lose their demands. It seeks a discovery as to what goods of the deceased have come to the hands of the administratrix or of the defendant Barney, other than those which have been inventoried: What goods of the deceased, or of others, and to whom belonging, were shipped on board of the vessel. It prays that the defendants, Peggy and Joshua, may be restrained by ne exeat from departing from the district until a full, fair, and final adminstration shall be made: That all the defendants may be enjoined and restrained from carrying away the goods shipped on board the vessel, and that Holliday and Allen may be restrained from departing until the said goods shall be surrendered and subjected to due examination and appropriation, under the jurisdiction and orders of this court. This bill being sworn to, the following order was indorsed by one of the judges of this court: "The clerk will issue a writ of ne exeat as prayed, restraining the defendants from removing out of the District of Columbia, with the effects within mentioned, unless they give bond with security in the usual form, in the penalty of one thousand nine hundred dollars; or shall deliver up to the marshal the said effects, to be subject to the future order of the court."

The answer of Peggy McLaughlin denies that she or the defendant Barney, is personally indebted to the plaintiff, and denies his claim to be just against the estate of her husband. It admits that the defendant Barney, and one Joseph Young, both of Baltimore, in Maryland, are her sureties in the administration-bond, and avers them both to be men of sufficient property;—that they were accepted by the judge of orphans' court, who has the sole jurisdiction as to their sufficiency, and denies the power of this court to judge thereon, or to require other sureties. It denies that she is about to change her residence, but avers that she only intended to pay a visit to her friends.

It denies that she intended to remove out of the jurisdiction of the court, which has the power to settle the deceased's estate. It denies that she has fraudulently concealed, or embezzled any of the estate,—but avers that she has fairly inventoried the estate according to the best of her knowledge. It avers that the goods on board the vessel were the property of herself, and other persons whom she names. That she has no inventory of those effects. It states that she purchased part of those goods, to the amount of eight hundred and thirty-eight dollars, from Mr. Crawford, who bought them at the sale of the deceased's estate. It again denies the power of this court to compel further security for the administration of the estate; and avers that if any waste, fraud, or embezzlement has taken place, there is a clear remedy on her bond already given. It alleges that several creditors, of whom the complainant is one, have filed a libel against her in the orphans' court, at Washington, on the ground of the fraud, concealment, and embezzlement, which is the subject of the present bill, and that that court has complete jurisdiction over the subject; and refers to the proceedings in that court. It further states, that the same creditors have filed a bill on the same grounds in the circuit court, in Washington county, a copy of which is referred to. It alleges that although she has sold property of the deceased to a Mr. Crawford, and given him possession, yet she is enjoined from taking his notes with surety, whereby the estate is put to hazard. It avers a design to oppress her by a multiplicity of suits, and by drawing her into different tribunals for the same cause of action.

In the answer to the libel in the orphans' court, which is made part of her answer to the present bill, she admits, that in order to be near her relations, she did intend to remove to Baltimore, but not to avoid the settlement of her husband's estate, nor to avoid the process of this court; but from the persecutions of her creditors she has changed her mind, and does not now intend to leave the District of Columbia, but means therein to reside, and settle the estate of the intestate.

E. J. Lee, C. Lee, and Jones & Hiort, for plaintiff.

Mr. Swann and P. B. Key, for defendants.

CRANCH, Chief Judge (DUCKETT, Circuit Judge, absent). The facts which give jurisdiction to this court in the present case are: That the complainant is a creditor of the deceased, residing in the District of Columbia. That letters of administration have been granted to the defendant, Peggy McLaughlin, by the orphans' court of Washington. That the only sureties for her faithful administration of the estate reside in Baltimore, in Maryland, and out of the

reach of the civil authority of this district. That the administratrix, Peggy McLaughlin, was about to remove with the effects of her deceased intestate, out of the District of Columbia, and beyond the reach of its process. That the orphans' court of Washington county, although it has exclusive original cognizance of the sufficiency of the sureties upon adminstration-bonds taken by that court, yet has no power to issue a writ of ne exeat, nor any other original process to restrain the administratrix from departing with the goods of the deceased, out of its jurisdiction. These facts being admitted by the answer, the court cannot dissolve or discharge the ne exeat as to the defendant, Mrs. McLaughlin. The court sees no ground for a ne exeat against Mr. Barney; if there was any stated in the bill it is removed by his answer. There may be some doubt also as to the power of issuing a ne exeat against a citizen of another state; the writ of ne exeat being considered as originally founded upon the right of the sovereign or of the state to demand the services of all its subjects. It is the opinion of the court, therefore, that the ne exeat should be discharged as to him, and as to Holliday and Allen, who, although they were charged by the bill with being concerned in the transportation of the goods so clandestinely attempted to be carried away, yet having voluntarily relinquished the business and delivered up the goods, ought not to be further charged. It is also the opinion of the court that the order of the judge did not require the marshal to detain the goods, if proper security had been tendered by Mrs. McLaughlin upon the process of ne exeat, the effect of the order being to give an option to the defendants to deposit the goods in lieu of other security.

It is therefore ordered by the court that the said goods, now in the custody of the marshal, be delivered up to the defendant, Peggy McLaughlin, upon her giving a ne exeat bond in the usual form, in the penalty of one thousand nine hundred dollars. Those goods are considered as having been voluntarily delivered to the marshal, and being thus in his hands, by virtue of a condition intended for the benefit of the defendants, the court does not think it right that they should take them back without giving that security for which they were intended as a substitute.

Upon the question respecting the attachments, the court is of opinion, that the defendant, Mrs. McLaughlin, has a right to appear without security. To require security, would be to evade the rule of law that an administrator is not required to give bail for a debt due from the intestate. To allow the goods of the deceased to be attached, would interfere with another rule of law, which requires the marshalling of assets, and the priority or equality of payment to the creditors of the intestate.

The court is also of opinion, that the process of chancery attachment will not lie in this court against the effects of a debtor, resident within the District of Columbia.

Upon the first hearing of the answer of Mrs. McLaughlin, the court noticed several expressions in it, which at that time, seemed indecorous and disrespectful towards this court and its process. It was endeavored, by her counsel, to explain them in such a manner as to show that they ought not to be considered as offensive. But upon a careful perusal of the answer, the court finds that its first understanding of those expressions was correct; and not to have noticed them, would have implied a carelessness of that self-respect, which it is the duty of every court of justice to maintain. The first expression alluded to, is that which charges, that the complainant's bill "contains a libel upon the orphans' court." Mrs. McLaughlin, or the solicitor who drew her answer, must have known, that the bill had been perused by one of the judges of this court, before the order for a ne exeat was made, and that the judge would not have made such an order, if the bill had been considered as a libel upon that court. Nor has the court found any thing in the bill which can justify that allegation in the answer. After the bill had been thus sanctioned by a judge's order, the court cannot but consider the expressions of the answer in that respect as disrespectful. The other expression alluded to, is that which declares, that the defendant's goods "have been shamefully and wantonly seized by the process of this court, at the instance and false suggestions of the complainant."

The court, therefore, directs the clerk to strike out those expressions in the answer of Mrs. McLaughlin. From the respectability of the counsel who has signed that answer, the court cannot believe that any thing disrespectful to the court was intended to be sanctioned by him, but is willing to believe that those expressions must either have escaped his notice, or have been understood by him in a manner different from the impression which they have made upon the court.