UNION MUT. INS. CO. (GRISWOLD v.). See Case No. 5,840.

UNION MUT. FIRE INS. CO. (JORDAN v.). See Case No. 7,522.

UNION MUT. LIFE INS. CO. (CHANCE v.). See Case. No. 2,588.

UNION MUT. LIFE INS. CO. (GAY v.). See Case No. 5,282.

## Case No. 14,373.

UNION MUT. LIFE INS. CO. v. KELLOGG.

[5 Wkly. Notes Cas. 477; 5 Reporter, 682.] [1]

Circuit Court, E. D. Pennsylvania. April 24, 1878.

RECEIVER—WHEN ALLOWED—FUND—INSURANCE—SUIT AGAINST AGENT—SET-OFF.

1. The corporation plaintiff filed a bill in equity, to determine, inter alia, the ownership of, and recover, a fund held by its agent, the defendant, and which came into the latter's hands as the plaintiff's money. After answer filed, the plaintiff moved for a receiver of the fund. Held that, without deciding the merits of the controversy, a receiver might be appointed before the evidence was closed, if the pleadings (coupled with defendant's admissions) showed: (1) The reception by defendant, as agent, of a fund prima facie belonging to plaintiff; (2) probable peril to the fund, if left in the defendant's hands pending litigation; and (3) a presumption that the fund was actually existing under the defendant's control when the bill was filed.

2. And this latter presumption will arise from a statement or admission by the defendant that he has not embezzled any portion of it, and that he can satisfy a decree for the amount, if against him.

3. The bill prayed an account of moneys received by the defendant for the company, and for a receiver to hold the fund pendente lite. The answer admitted the receipt of the money, but averred a set-off for prospective salary and commissions, which the defendant alleged he had been prevented from earning by the plaintiff having illegally terminated his contract of agency; also other smaller items of set-off. The pleadings showed that, even were the smaller items admitted, but the first disallowed, there should be a balance due the plaintiff. The evidence, as far as taken, showed probable peril to the fund if left in defendant's hands. Held that, after answer filed, but before the evidence was closed, a receiver should be appointed for such balance, without deciding the merits of the controversy; but quære, whether, in equity, such prospective earnings could, in such a case, be the subject of a set-off against the company by its agent.

Bill in equity, filed in March, 1877, by the Union Mutual Life Insurance Company against the defendant, its general agent for the states of Pennsylvania and Maryland, averring that, by the terms of a written contract annexed to the bill, the company had a right to discharge the defendant upon thirty days' notice, which right it had duly exercised; that the defendant had received, as the company's agent, large sums of money for premiums, of which there remained a balance due to the company, after all deductions to which the defendant was entitled, of over $15,000. The bill also averred that the defendant had refused to account; that there

[1] [5 Reporter, 682, contains only a partial report.]

was danger of his removing from the jurisdiction of the court, and of his taking with him all his property; and that there was imminent danger of a waste of the plaintiff's money, if left in the defendant's hands. The bill prayed for a writ of ne exeat, a receiver, an injunction forbidding the defendant to dispose of any of the company's moneys, and an account.

On the day that the bill was filed, after hearing counsel for the defendant, the writs of injunction and ne exeat, as prayed for, were issued, the amount of the bond in the writ of ne exeat being in the sum alleged in the bill to be due the plaintiff. A short order to plead, answer, or demur in eight days was at the same time granted.

An answer was subsequently filed, in which the defendant stated an account between himself and the company, in which he credited the latter with the amount of money claimed in the bill, and debited it with various disbursements alleged to have been duly made by him for the company, together with certain claims by him against the company, resulting in a balance in the defendant's favor of $1,500. The answer also alleged that the contract of agency was, by its terms, to last till December 1, 1878; that it had been wrongfully and unlawfully terminated by the plaintiff in January, 1877; that by the contract the defendant was entitled to salary and commissions from the actual termination of the agency to the end of the term of service contracted for (January, 1877, to December, 1878); and two items of $7,000 and $5,500 were, inter alia, claimed by way of set-off for such prospective salary and commissions.

A replication having been filed, a master was appointed to state an account, and much testimony was taken, the effect of which, however, was unimportant in the view the court took of the case, except that, coupled with the pleadings, it showed the plaintiff's money to be in peril if left in the defendant's hands. Before the testimony was closed, the plaintiff's counsel moved for a receiver.

S. B. Huey and G. W. Biddle (A. Sydney Biddle and Daniel Magoon with them), for the motion, argued that a motion for a receiver was like a motion for an injunction, which could be made interlocutorily. It rests in the sound discretion of the court, and will be made where it appears, prima facie, that the defendant had money in his hands belonging to the plaintiff, and that the fund was in peril, provided it could be shown by a fair presumption that the fund was in existence when the application was made.

[S. B. Huey and G. W. Biddle, for plaintiff.

[The payment of money into court pendente lite is a provisional remedy, not affecting the merits, but intended merely to secure the fund for the rightful owner. It is analogous to the appointment of a receiver, which always rests in the sound discretion of the court. The cases as to receivers are applicable to the present motion. As to them, see Verplank v. Caines, 1 Johns. Ch. 57; Jenkins v. Jenkins, 1 Paige, 243; Janeway v. Green, 16 Abb. Prac. 215, note. 1 Till. & S. Prac. 731; Sheldon v. Weeks, 2 Barb. 533; Skip v. Harwood, 3 Atk. 564; Chautauqua Co. Bank v. White, 6 Barb. 597; Parkhurst v. Kinsman [Case No. 10,760]; State v. Delafield, 8 Paige, 527. The present application should be granted if we can show trust assets and improper conduct on the part of the trustee. If the defendant declines to state where money is which he admits having received, we can but conclude that he still has it. The course which we ask the court to pursue is not without precedent. Askew v. Odenheimer, U. S. Cir. Ct., E. D. Pa., June, 1830 (unreported);[2] Dillon v. Connecticut Mut. Life Ins. Co. [44 Md. 386]. It is submitted that the admission of having the money claimed for salary is a sufficiently explicit admission of money on hand to justify the court in making the order moved for.

[R. M. Schick (with him B. H. Brewster), contra.

[The only circumstance under which a court will order money to be paid in by an interlocutory order is where the money is unqualifiedly admitted to be in the hands of the defendant, and is not to be ascertained by calculation, except where the amount can be fixed by mere addition or subtraction, and the other circumstances of the case are such as to justify the belief that the fund is in danger. Mills v. Hanson, 8 Ves. 68; McTighe v. Dean, 22 N. J. Eq. 81; Kirk v. Hartman, 13 P. F. Smith [63 Pa. St.] 97; Yelland's Case, L. R. 4 Eq. 350; Ex parte Clark, L. R. 7 Eq. 550; Ex parte Logan, L. R. 9 Eq. 149. In this case, to ascertain the amount to be paid over an account has to be taken, and it would be deciding on the question of salary and commissions due to the defendant. The court will not decide a case piecemeal. Thomas v. Howell. L. R. 18 Eq. 203; East Anglian Rys. Co. v. Lythgoe, 10 C. B. 726.][3]

[Before McKENNAN, Circuit Judge, and CADWALADER, District Judge.]

[McKENNAN, Circuit Judge, held that, while the court would not make an order such as requested, except wherever it appeared that the money was actually in the hands of the defendant at the time of the application, not that it merely had been, and the amount was admitted, or could be ascertained by mere addition and subtraction, the other circumstances leading to a belief that the fund was in danger; yet that, in this case, the amount was so ascertainable, viz., by taking the two contested items of credit, and subtracting the balance claimed by the defendant, and that possession was sufficiently admitted by the admission of an

---

[2] [See Case No. 587.]

[3] [From 5 Reporter, 682.]

equivalent sum in the defendant's affidavit, he would therefore make the order moved for.] [4]

(CADWALADER, District Judge. If you can show money in the defendant's hands.—not money theoretically in his hands, not money he has embezzled,—but money actually in his hands, we shall be desirous to act interlocutorily. We can do that.)

Messrs. Huey and Biddle, in reply.

This is shown by the bill and answer The defendant admits having received our money, which, to the extent of $12,500, he is not entitled to set off, or, at any rate, if he is, the fund has been shown to be in peril.

(CADWALADER, District Judge. What is the inference from that? Is it not that he corruptly held it and used it? How does that put the money in his hands, so that we can order him to pay it before final decree, or put him in jail for not doing it? Is the inference from these facts that he still has it, or that he has improperly used it? In Askew v. Odenheimer (not reported),[5] a case in which I was counsel, the defendant, in his answer, denied having anything of the plaintiff's. On the mere question of arithmetic it was found that he had several thousand dollars, upon the admitted facts; and, even in that case, we could not get the money paid into court until the answer was filed. But upon the answer it was a question of partnership. He did not divide by two when he ought to have done so, and the consequence was that five thousand dollars was ordered to be paid into court. That was, however, done with great caution, and because these facts appeared in the answer. As Judge McKENNAN suggested to me just now, you appear to be applying for execution before judgment.)

We do not want this money ourselves, we merely want it paid into court. All the facts on which we rely appear in the bill and answer, and therefore the principle in Askew v. Odenheimer was precisely the same as here.

(CADWALADER, District Judge. Precisely, but the facts were the reverse. A partner had cheated his copartner, and had made an assignment to the copartner for his indemnity. The copartner who had been cheated put his foot on the neck of the copartner who had cheated him and would not account. The man who had cheated him filed a bill in this court, and the defendant stated, in his answer, that so much was required to indemnify him. He did not observe that half of that belonged to the partner, and upon the simple arithmetic he was ordered to pay so much into court, by his own admission, upon his own answer, that he had so much money of the plaintiff's in his hands. The receiver will not be appointed until the final decree, unless it appear by

the answer that the defendant still holds the fund. I agree to everything you say, if you can show that there is a fund, as contradistinguished from a debt.)

The case is identical with Askew v. Odenheimer [supra]. Here the defendant in his answer expressly charges himself with a large amount of money received for the company as its agent. He sets up counterclaims, which will exhaust that fund, and leave a balance in his favor of $1,500. Two of the items of set-off are for matters which he cannot claim to set off in equity at all. Therefore, after deducting from the total of those items the excess of $1,500, he has acknowledged, unless it is fair to infer embezzlement, a fund to that extent (viz., $11,000) of the company's money in his hands. The case of Dillon v. Connecticut Mut. Life Ins. Co. [44 Md. 386] was this identical case. The items of set-off claimed there were the same as here, and the court appointed a receiver, and this was affirmed in the judgment of the court of appeals.

(CADWALADER, District Judge. Was the receiver appointed there before final decree?)

Yes, before the testimony was closed, just as here, upon bill and answer. It is not fair to infer that the defendant has committed a fraud and embezzled the money.

(McKENNAN, Circuit Judge. I understand you to say that, by the necessary import of this account in the answer, the defendant admits that he has $12,500 in his hands, and that he says he is entitled to retain it, because he has these two claims, amounting to that sum, against the company. I think that is a fair inference from the document. There are two alternatives. In the first place, the defendant admits that he himself received the money, and has it in his hands, but claims to retain it because he says he has certain credits which ought to be allowed him; or else he must say that he is justly subject to the reproach of having criminally embezzled the plaintiff's money, so that I do not think that we ought to seek to get rid of his admission. If we have, by the documents furnished by the defendant himself, by his own answer, distinct admission that he had a certain amount in his hands when the bill was filed, I think we ought to lay our hands upon it. I do not think that there is any question, even of arithmetic, here, as to the indisputable consequences of the admissions in the answer.)

Upon the 25th of April the counsel of the defendant presented the latter's affidavit stating that he had not concealed the $12,500, or any part of it, or embezzled it, or wasted it, or put it out of the way in any sense, to prevent the plaintiff from recovering it, if he could establish his right to recover it; that the defendant was entitled to this money, or, if otherwise, that he had acted in perfect good faith; that he was not insolvent; that he had means out of which the full amount claimed by the plaintiff, if a decree

---

were finally made against him for that amount, could be paid.

(McKENNAN, Circuit Judge. I think the affidavit which has just been read comes pretty close to admitting that the defendant has this money in his hands. and he denies any improper use of it.)

Mr. Slick and B. H. Brewster. contra, argued that there was no admission, in the answer or by the affidavit, that any of the plaintiff's money was in the defendant's hands. On the contrary, by the answer. a balance of $1,500 was shown to be due to the defendant. He had a perfect right to retain that $12,500 to liquidate the damages which he had sustained by his having been wrongfully removed from the agency by the company. Much of this money had been received years before. The affidavit was in no sense an admission that he still had any of the company's money, but a mere denial of the improper use of whatever small balance, if any, was due the company, and which he still had. The decision of McTighe v. Dean, 22 N. J. Eq. 81, was substantially identical with this case. There the receivership was refused. The state of the accounts cannot possibly be determined until final hearing. The evidence is not all in. There is nothing to show that there is any specific fund in the defendant's hands.

(McKENNAN, Circuit Judge. The defendant's affidavit gets us over a matter of some difficulty, that both Judge CADWALADER and I had yesterday; that is, whether the defendant might not have used this money. He denies that. The money that he got, belonging to the plaintiff, he says he has still in his hands.)

We do not deny that there was money of the company which came into our hands, but we claim that we have a right to hold that to meet the damages which we have suffered by their unlawful violation of their contract: but we do deny that there is any admission in the papers as to the amount we hold. This proceeding departs from all the precedents in this. that here you pick out two items from a voluminous account which no one but an expert can unravel, and hold that they admit that amount of the plaintiff's money to be in the defendant's hands.

(CADWALADER, District Judge. I have no doubt it is a great novelty at this stage of the case, and a very important—I do not say dangerous—novelty. There was. however, another case in the court of common pleas (not reported) exactly identical with that of Askew v. Odenheimer.)

We have a right to retain enough of the defendant's money to reimburse us for his wrongful conduct in terminating the agency. Kirk v. Hartman, 13 P. F. Smith [63 Pa. St.] 97; Yelland's Case, L. R. 4 Eq. 350; Ex parte Clark, L. R. 7 Eq. 551; Ex parte Logan. L. R. 9 Eq. 149; Thomas v. Howell, L. R. 18 Eq. 203; East Anglian Rys. Co. v. Lythgoe, 10 C. B. 734. By the English statute unliquidated damages cannot be set off, but in this state unliquidated damages may be.

Eo die, THE COURT (McKENNAN, Circuit Judge). We make the order asked for. The only difficulty that I have had about it. so far as my own views are concerned, was of a twofold character: First, whether there was an admission in the answer, in the exhibits, and in the depositions of the respondent, of any fixed, determinate sum in his hands at the filing of the bill, which was received by him by virtue of his relations with the company as its agent, in the course of the business which he undertook to discharge. That difficulty was removed by the averments in the account contained in the answer, showing an admission by him of the receipt of a certain sum. He claimed to reduce that liability by two items showing that that amount—the aggregate of those two items—had not been expended. The next difficulty was as to whether this money was in such a state that it could be traced and substantially identified; in other words, whether it had been made away with by this man, and was therefore gone as a distinctive fund. That difficulty, again, was removed by the affidavit of the man himself. As I understand it he distinctly disclaims having made any improper use of this money, so that it must be in his own hands. and can be traced there. The fact that this money was received by him as the property of the plaintiff. and belonging to the plaintiff here. is unquestionable. The answer shows that. Now, that he should be permitted to retain that money as security for a claim which he sets up against the company, I cannot see should be any more readily conceded than that the money should be placed in some safe place. where it can be avai ble to be paid wherever in the ultimate result of this litigation. it should be awarded. So that, without intending to establish any precedent, except so far as future cases may accord in their features and circumstances with this case. I think that. under the circumstances of this case, we ought to make the order.

CADWALADER. District Judge. I have no doubt that the order will meet the real justice of this case. I should have been satisfied with an order either way, either allowing or refusing the application; but, upon the general reasons of the administration of justice. I should have been better satisfied, though I do not intend to dissent from the order made. with suspending this order until the final hearing. The precedent will be a dangerous and an embarrassing one. Still it does meet the justice of the case. and as the application was finally put entirely upon the pleadings. upon the bill and answer, with-

out the affidavits or depositions that were originally exhibited, it is sufficiently within the precedent of Askew v. Odenheimer and the Maryland Case, which seems to be the only other authority, for me not to dissent from an order which I think meets the justice of the case.

The following order was then ordered by THE COURT to be entered:

And now, April 27, 1878, upon motion of complainant's counsel, and after argument by counsel, it is ordered that the sum of $11,000 be paid into the registry of the court on or before the 28th day of May, 1878, by the defendant, Edward Kellogg, to abide the final decree of the court in this cause.

NOTE. The sum of $11,000, ordered to be paid into court was obtained by deducting $1,500 (the balance the defendant alleged to be due him by the company on an account stated) from the aggregate of the two items of $7,000 and $5,500 claimed for prospective salary and commissions.