GOODING v. REID, MURDOCK & CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1910.)

No. 1,550.

1. NE EXEAT (§ 3*)—CONSTITUTIONAL LAW (§ 83*)—JURISDICTION TO ISSUE WRIT—CONSTITUTIONAL PROVISIONS.

In a suit in equity for an accounting under a contract and for a receiver for the property embraced in the contract, a part of which is in a foreign country, as an appropriate process toward preserving the property and compelling its delivery to the receiver to abide the final decree, the court has power to issue a writ of ne exeat, and such writ is not a violation of a constitutional provision prohibiting imprisonment for debt.

[Ed. Note.—For other cases, see Ne Exeat, Cent. Dig. §§ 3–6; Dec. Dig. § 3;* Constitutional Law, Cent. Dig. §§ 150–151; Dec. Dig. § 83.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** INJUNCTION (§ 32*)—RESTRAINING ACTION AT LAW—PROTECTION OF COURT'S JURISDICTION.

A court of equity, which has issued a writ of ne exeat, has power to enjoin the prosecution of an action at law, brought in another court pending the equity suit, to recover damages for false imprisonment under such writ; such equity court having power in the pending suit to redress any wrong sustained by the wrongful issuance of its process, and exclusive jurisdiction to do so.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 69, 72, 73; Dec. Dig. § 32.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Reid, Murdock & Co. and others against Frederick Charles Gooding. From an order granting an injunction, defendant appeals. Affirmed.

The appeal is from an order of the Circuit Court enjoining appellant, his agents and solicitors, from further prosecuting against appellees a suit at law in the Circuit Court of Cook County (and from instituting and attempting to institute, or prosecute, any suit at law) on account of, or based upon, appellant's alleged false imprisonment under a writ of ne exeat, issued in the suit in equity of appellees against appellant, now pending in the said Circuit Court of the United States for the Northern District of Illinois, in which suit the order appealed from was entered.

The suit in equity is by appellee, a corporation under the laws of Illinois, against appellant, a citizen of Great Britain, and is for an accounting by appellant to appellee, on account of a contract entered into between them respecting the purchase and sale, by appellant, for and on account of himself and appellee, of olives growing in the Kingdom of Spain; for a receiver to take charge of all the olives, accounts and bills receivable, moneys, credits, effects and property of every kind, growing out of said contract, whether in the city of Seville, in the Kingdom of Spain, or elsewhere; for a cancellation and termination of the contract; and for an injunction restraining appellant from suing appellee upon, or setting up or claiming, any right under said contract; as also for a writ of ne exeat republica, forbidding appellant from departing without the jurisdiction of the Court until his compliance with, and performance of, all the orders and decrees therein entered.

Thereupon, after hearing upon a motion therefor, a receiver was appointed, and appellant directed to transfer and deliver the moneys, olives and other property, referred to in the bill, and also directed not to take any steps to prevent the receiver from procuring title to, or obtaining possession of same, said order of possession extending to the olives in the Kingdom of Spain as well as elsewhere. At the same time a writ of ne exeat was issued, restraining appellant from departing out of the jurisdiction of the Court, the said writ being marked for security in the sum of One Hundred and Forty Thousand Dollars; which security was given and accepted.

In due time, motion to quash the writ of ne exeat was made and overruled; and upon the receiver's report to the Court that he had possession of all the property prayed for in the bill, including the olives in the Kingdom of Spain, the appellant was released and discharged upon giving bond in the sum of Ten Thousand Dollars that he would not depart from the jurisdiction of the Court, except upon the condition that he would personally appear before, and surrender himself to its jurisdiction after he had been so ordered to do; whereupon the suit, restrained by the order appealed from, for $100,000 damages for false imprisonment, was brought in the Circuit Court of Cook County by appellant against appellees. The further facts will be found in the opinion.

Almon W. Bulkley, for appellant.

Isaac H. Mayer, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GROSSCUP, Circuit Judge, after stating the facts as above, delivered the opinion.

The equity suit, in which the writ of ne exeat was issued, is still pending. The immediate question before us is whether, pending such suit in equity, an independent action at law for false imprisonment, growing out of the execution of the writ, can and ought to be enjoined; and this question depends largely on whether, as an appropriate process of furthering the jurisdiction and orders of the equity suit, the issuance of a writ of ne exeat is coram non judice.

The chief arguments made against the writ are, that it amounts to imprisonment for debt, and that there is no imprisonment for debt in Illinois; that it will be issued only when the demand sought to be enforced is certain in its nature, actually payable, and not contingent; and that it will not be issued in an action for an accounting, unless there is an admitted balance due by the defendant to the plaintiff; all of which arguments, except the first, challenge not the jurisdiction of the Court to issue, but the sufficiency of the case made out in such Court to call for the exercise of its jurisdiction, and are therefore immaterial here, because this is not an appeal from the order issuing the writ, nor from the order denying the motion to quash the writ. nor from any order involving appellant's right to an assessment of damages in the equity suit, on account of the issuance of the writ, but an appeal from an order that forbids appellant from going into any Court, other than the Court from which the writ was issued, to determine these questions. And granted that the Court had jurisdiction to issue the writ, and that it had power to protect this jurisdiction so as to make it all inclusive of the questions that might arise thereunder, including the question of damages; these questions are not questions that arise on this appeal.

(1) Did the equity court have power, as an appropriate process toward preserving the property brought by the bill within its jurisdiction, compelling a delivery to the receiver, and to prevent an evasion of its order, to issue the writ? We think it did. The constitutional provision regarding imprisonment for debt does not prohibit the exercise of equitable process for the purposes named. Dean v. Smith, 23 Wis. 483, 99 Am. Dec. 198. The writ is one of right (2 Story's Eq. Jurisp. [10th Ed.] § 1469), and as said in the preface to Warner's 1st Am. Ed. of Beames' Ne Exeat Regno, is little more than an order to hold to equitable bail, the party generally getting rid of it by giving security to abide the event of the litigation. And in a number of cases in this country, as an appropriate equitable process, the writ has been utilized and sustained. Patterson v. McLaughlin, 1 Cranch, C. C. 352, Fed. Cas. No. 10,828; Union Mutual Life Ins. Co. v. Kellogg, 24 Fed. Cas. 611, No. 14,373; In re Rosser, 101 Fed. 562, 41 C. C. A. 497; Dean v. Smith, supra.

In Enos v. Hunter, 4 Gilman (Ill.) 211, it was said:

"Where the relief sought could be effected by acting directly upon the person of the defendant, the court of chancery has never hesitated to entertain the bill where the defendant is found within its jurisdiction, whether the subject-matter of the controversy be within its control or not. Of this character are those cases where the courts have compelled specific performance

of contracts for the conveyance of, or relating to land which is situated beyond its jurisdiction. And in such cases the court will compel a conveyance to be executed, in such manner and form as may be prescribed by the law of the country where the land is situate. And if need be, in order to effect this, they will prevent the defendant from leaving the jurisdiction of the court, pendente lite, by a writ of ne exeat."

In Mitford & Tyler's Pl. and Pr. in Equity, p. 144, it is said:

"For the purpose of preserving property in dispute pending a suit, or to prevent evasion of justice, the court either makes a special order on the subject, or issues a provisional writ; as * * * the writ of ne exeat regno to restrain the defendant from avoiding the plaintiff's demands by quitting the Kingdom."

In a note to Section 865, Gibson's Suits in Chancery (1907), it is said:

"It would seem that a ne exeat is a writ necessary for the purposes of justice when the defendant, by leaving the state, can defeat the power of the court to grant effectual relief, or evade the relief granted; especially when the relief consists in compelling the defendant (1) to execute to the complainant a deed for land, or other property, situate in another state, or * * * (4) to do some other act which the court could not effectually do by the direct and inherent operation of its own decree. The object of the writ is to enable the court to act upon the person of the defendant in such cases. 1 Barb. Ch. P. 647, 651, 652; 2 Dan. Ch. Pr. 1698, note; 2 Sto. Eq. Jur. §§ 1471, 1472, note."

That the writ was not coram non judice, seems clearly, by these authorities, to be established.

(2) Had the equity court, in pursuance of its power to issue the writ, power to enter the order appealed from, restraining the law court from proceeding with the action at law? The question, as we have already said, is not, Shall a "Federal Court" restrain the "State Court," but shall a Court of equity restrain a Court of law from taking jurisdiction of a complaint, by a party to the equity suit, that one of the processes of the Court of equity, issued against him, was wrongfully issued, and undertaking to redress that wrong? The question has been up in England in Aston v. Heron, 2 My. & K. 390, 39 Eng. Reprint, 393, and in Frowd v. Lawrence, 1 Jac. & W. 656. In the first of these cases, Lord Brougham, Lord Chancellor presiding, speaking to the question above stated, says:

"The Court excludes all other jurisdiction in everything relating to its process, not only preventing any other Court from judging whether or not its orders were regular, but from examining into the regularity of their execution; and not only preventing such examination, but shutting out redress at any hands but its own, where a wrongful act is admitted to have been done under color of obeying its commands. It assumes to be the only judge of all that regards the issuing and the execution of its own orders. Whether or not it be necessary that the Court should enjoy this jurisdiction, and have the power of enforcing it, exclusive of all interference, even where its orders cannot be said to have been obeyed, but rather have been colorably used as a pretext for wrong-doing, it it is now too late to inquire. The question has been settled long ago."

And in the second of these cases, speaking to the same question, Eldon, Lord Chancellor, says:

"In this case an attachment, under which the defendant was taken up, issued regularly, and, upon his application, it was afterwards discharged,

with costs. No application was made to this court, to visit the proceeding upon the parties concerned; but the defendant, after the attachment is discharged, brings an action at law for damages, and a motion is now made to me for an injunction to restrain him, brevi manu, from going on with it. I need not point out the importance of the question, because it is one between this court and the right of the subject to ask of a jury, whether he is not entitled to damages for being deprived of his liberty. It was stated that there was a case in Vernon, in which it had been expressly laid down that the court would not permit such an action to go on. That was a very strong case. The ground there taken was, that the court would not suffer its process to be examined by any other court; and that a court of law could know nothing of it."

*     *     *     *     *     *     *     *     *     *

"But this does not mean, that the persons concerned will not be obliged to make the party satisfaction; only that it must not be done by an action at law. It is impossible, from the nature of the thing, that they can try the regularity of an attachment in a court of law. The injunction must be, without prejudice to any application that the defendant may be advised to make for compensation, or the costs at law."

The reference of Lord Brougham, to the question as one settled "long ago," and now "too late" to inquire into, is a reference probably, at least in its origin, to the celebrated contest between Lord Chief Justice Coke and Lord Chancellor Ellesmere, in the time of James I, as to whether a court of equity could restrain a judgment at law in which, as stated in Vol. 1, p. 5, Ames' Selection of Cases in Equity Jurisdiction, foot note, "Lord Ellesmere's triumph was complete."

In this country, in Mackay v. Blackett, 9 Paige Ch. (N. Y.) 437, Walworth, Chancellor, speaks as follows:

"It [the court] must restrain of course; otherwise it permits its own orders to be rescinded and its jurisdiction to be questioned—its orders to be rescinded indirectly and not by the superior court of appeal; its jurisdiction to be questioned by courts of inferior or co-ordinate authority."

Also Reynolds v. Corp., 3 Caines (N. Y.) 268 (Chief Justice Kent). And in Foster's Federal Practice (Third Edition) Vol. 1, § 263, treating specifically of the practice in obtaining the writ of ne exeat, the author concludes:

"The discharging order usually enjoins the defendant from bringing an action of false imprisonment (citing Darley v. Nicholson, 2 Dr. & War. 86); and the prosecution of such an action may be restrained by a subsequent order. (same citation)."

This is sufficient authority, it seems to us, to settle the question in favor of the Court of equity's right to enjoin. Upon principle the right ought to exist. It does not deny to the person, against whom the process has been issued, his right to redress; for, contrary to the wrong sued upon in the ordinary action for false imprisonment, the party has redress in the Court that issues the process. There is no need, therefore, that he have the right to bring an action for false imprisonment. On the other hand, the need is imperative that a Court of equity, issuing process in furtherance of its purposes, and within its jurisdiction, shall not be hampered by collateral inquiry, in other Courts, as to the legality of such process, or the sufficiency of the grounds upon which it was issued. For conflicts of that kind, proceeding with varying fortunes in the different Courts, besides weighing

down litigation with additional expense, can result only in making those things uncertain that ought, at every stage of the proceeding, to be capable of being reduced to certainty. Equity Courts, subject to such procedure, would no longer be the masters of their writs.

The decree appealed from is affirmed.