## SAMUEL *v.* WILEY.

Upon affidavit of the complainant, in a proceeding in equity, that the defendant conceals his property so that no attachment or levy thereof can be made, and that there is good reason to believe that he is about to leave the State to avoid the payment of his debts, and sufficient evidence in support thereof, any justice of the supreme judicial court, in vacation, is empowered to issue an order requiring the arrest of the defendant, or an attachment of his goods or estate, as security for the enforcement of the final decree of the court in the proceeding in aid of which such order is issued.

Independent of statute authority, and under the powers essentially incident to the obtaining security for the performance of its decrees, a court of equity, or a justice thereof, in vacation, may by writ of *capias* order the arrest of a party intending to leave the State in order to avoid such decrees, in a case where the complainant has not a legal remedy and cannot hold the defendant to bail.

The authority and practice in such cases are analogous to the authority and practice pertaining to the writ of *ne exeat regno*, as recognized and administered by the English law.

The facts relating to this case are sufficiently disclosed in the opinion of the court.

*Wood*, for the plaintiff.

*Goodall*, for the defendant.

FOSTER, J.    There is a suit in chancery now pending before this court, in which the present defendant seeks the aid of the court to compel specific performance, by this plaintiff, of the contract set up in the bill.

After the filing of the bill, the complainant appended to a copy thereof his affidavit, stating that "the within named Patrick Samuel conceals his property so that no attachment or levy thereof can be made, and that there is good reason to believe, and that I believe, he is about to leave the State in order to avoid the payment of his debts."

Whereupon one of the justices of this court, in vacation, issued the following order: "To the sheriff of any county in this State, or his deputy: You are hereby commanded to arrest the body of the within named Patrick Samuel, or attach his goods or estate to the value of one thousand dollars, and have him before the law term of the supreme judicial court, to be holden at Exeter on the third Tuesday of June next, to answer to this plaintiff."

The plaintiff in this suit was arrested by a deputy sheriff and committed to jail. And now he claims that this arrest was illegal, and seeks to recover damages against this defendant for having procured the same.

This court has the powers of a court of equity, in cases cognizable in such courts, among which is the specific performance of contracts. Gen. Sts., ch. 190, § 1.

"Interlocutory decrees and orders and other incidental proceedings may be had and done by one justice, in term time or vacation." Chap. 190, § 12.

"Upon the application of any party to a suit in equity, an order may be made, when it appears to be required for his security, for a writ of attachment in his favor, in such form and returnable as the court may direct, against the estate or property of any other party." Chap. 190, § 7.*

The prayer of the bill in equity for specific performance of the contract would be idle, and a decree in answer to such prayer of no avail, unless control might be obtained of the person or property of the defendant; and, therefore, the legislature has wisely given this court the power to issue the writ of attachment, whenever it shall appear to be required for the security of any party asking for a final decree. Such necessity was made apparent in the present case, by the evidence furnished, to the effect that the defendant in the bill concealed his property, and was about to leave the State to avoid the payment of his debts. Evidence of concealment and avoidance was sufficient to authorize the attempt to obtain security by means of the writ of attachment. But the law has made still further provision for the complainant's security: "*In any case*, where no sufficient attachment has been made and there is no sufficient bail, the court, or any justice thereof, upon motion and satisfactory evidence that the defendant intends to leave the State, may order a *capias* to issue, on which the defendant may be arrested and held to bail as on an original writ." Chap. 206, § 12. In this case there had been no attachment, and, if the defendant successfully concealed his property, there could be none; and evidence was submitted to the justice that he was about to leave the State: so that ample foundation was laid for the issuing of a peremptory *capias;* and the defendant has no cause for complaint, that, by the order of the court, the capias was to be executed only in the alternative of a failure to obtain security by way of attachment.

The proceedings and the remedy are entirely independent of those provided by sections 7 & 8 of ch. 206, but they are not invalidated by the adoption, to some extent, of the forms prescribed by the law for the affidavit in the case contemplated by those sections.

It is said that the statutes to which we have referred were not intended for application to proceedings in equity.

Considering the broad and unlimited language of sec. 12, ch. 206— "in any case"—we should, certainly, not be at liberty to infer that the legislature did not intend to apply its provisions to proceedings in equity, in which an attachment was *authorized*, which would be wholly

---

* And the order may be made by the Supreme Court in term time, or by any justice thereof in vacation. Act June 30, 1869.

REPORTER.

nugatory without the additional grant of such powers as are incident, in suits at law, to the failure to obtain that security which was intended to be furnished by the attachment.

But assuming this position to be correct, we are of the opinion that the justice had power, entirely independent of those statutes and by the common law of equity procedure, to issue the order in question.

Its purpose was to secure obedience to the decree of the court; and its exercise is analogous to proceedings under the English writ of *ne exeat regno*, which has been frequently adopted in the practice of the American courts of chancery.

By chap. 189, § 1, Gen. Stats., this court has power to issue writs of error, &c., " and all other writs and processes to other courts, to corporations, and to individuals." This extensive grant, if it were requisite, would seem clearly to authorize the issue of the writ of *ne exeat*, or other analogous process, when necessary to effectuate its decrees.

Although formerly only issued under the king's high prerogative, and directed against those machinating and concerting offences against the crown, it has, at length, been applied to prevent a subterfuge from the justice of the nation, though in matters of private concernment. Wendell's note to 1 Bl. Com. 266 ; 2 Madd. Chancery Prac. 182.

It is now said to be an ordinary process of courts of equity, and has come to be regarded as much a writ of right as any other process used in the administration of justice. See *DeCarriere* v. *DeCallone*, 4 Ves. Jr. (Sumner's ed.) 577, and note.

The effect is to hold a party amenable to justice, and to render him personally responsible for the performance of the orders and decrees of the court, by preventing him from withdrawing himself from its jurisdiction. *Johnson* v. *Clendenin*, 5 Gill & Johns. 463.

It issues only upon an equitable demand, and not where the plaintiff, by process of law, may hold the defendant to bail. *Atkinson* v. *Leonard*, 3 Bro. C. C. 218 ; *Jones* v. *Sampson*, 8 Ves. Jr. 593. It is resorted to for the purpose of obtaining equitable bail, and will be discharged on giving security. *Howden* v. *Rogers*, 1 Ves. & Bea. 129.

Whenever the defendant intends leaving the State, the complainant, upon producing evidence of such intention and of his equitable claim, has a right to equitable bail. *Mitchell* v. *Bunch*, 2 Paige Ch. 617. The writ may be applied for at any stage of the proceedings. *Dunham* v. *Jackson*, 1 Paige Ch. 629. The prayer for the writ need not be inserted in the bill. *Collinson* v. ————, 18 Ves. Jr. 353 ; and no notice of motion for the writ is required. *Ib.*

The writ, with all its powers and limitations, and conformable to the English authorities and practice, is clearly recognized in the American courts as a writ of right, in the cases where it is properly grantable— 2 Story's Eq. Jur., § 1,469 ; and it is very commonly applied in the chancery practice of the Federal courts, by virtue of United States laws. Act of Congress of March 2, 1793, ch. 22, § 5.

The order upon which this arrest was made, was not, and did not purport to be, a writ of *ne exeat*. That writ, as we have seen, has for

its special object the procuring of special bail.   In the forms described by Beames, the officer is commanded to cause the defendant to give bail in a certain sum that he will not quit the kingdom without leave of court; and for want of bail, to commit the defendant to prison. 4 Bouv. Inst. 284.

But in its general purpose, namely, to prevent the avoidance by the defendant of the decrees of the court, the order issued by the justice in this case is more analogous to the form and procedure in case of the writ of *ne exeat*, than to any other proceeding known in American equity practice.

As in the case of the arrest on *ne exeat* the defendant would be discharged on tender of sufficient bail, so, here, he might apply to have the order superseded by tender of bail or other security.   And if, as we understand the fact to be, our court has all the powers that can be exercised by means of the writ of *ne exeat*, we are unable to regard the order in this case as being in excess of the power thus conferred.

We are of the opinion, then, that not only under the authority of the statutes of this State, but independent thereof, and as an incident to the power of enforcing its essential orders and decrees, any justice of this court, upon evidence satisfactory to him of a party's intention to leave the State, was empowered to issue such an order as that upon which this arrest was made; that the same was therefore a legal arrest, and that this defendant is not responsible to the plaintiff in the present action.

It should, however, be remarked, that, since it is quite evident that the extensive power exercised in such cases is one capable of abuse by unscrupulous or inconsiderate men in authority, it should be resorted to only in cases of extreme necessity, and always applied with great caution.   "I never apply it," says Lord ELDON, "without apprehension." 1 Ves. & Bea. 373.