## SHAINWALD *v.* LEWIS.

*(District Court, N. D. California.* April 8, 1889.)

1. **JUDGMENT—SATISFACTION—JOINT PARTIES.**
Separate judgments were rendered against two joint tort-feasors, and suit begun against the third. Two of the three paid the plaintiff $50,000, whereupon the judgment against one of them was vacated, and the suits against both of them dismissed. They signed a statement to the effect that the payment was made to reimburse the plaintiff for his costs, expenses, and attorney fees, and not in satisfaction of the cause of action sued on. *Held* that, notwithstanding this statement, the third tort-feasor was entitled to have such payment credited on the judgment against him.

2. **SAME—REVIVAL—PAYMENT.**
In an action to revive a judgment, money collected by a receiver appointed in a creditor's bill brought on the judgment should be credited on the judgment.

3. **EQUITY PRACTICE—NE EXEAT.**
Under Rev. St. U. S. § 717, which declares that no writ of *ne exeat* shall be granted unless satisfactory proof is made that the defendant designs quickly to depart from the United States, such writ should not be granted in a suit to revive a judgment, where no writ was granted in the action in which the judgment was rendered, but one was granted in a creditor's bill brought on such judgment, under which the defendant was held under bond for more than seven years, especially where the allegation that defendant intends to depart is denied by answer, and is not supported by proof.

At Law.

*James L. Crittenden,* for complainant.

*Walter J. Tuska,* for defendant.

HOFFMAN, J. This is an action brought by Herman Shainwald, assignee in bankruptcy on a judgment recovered in this court against Harris Lewis, November 5, 1880, (in case No. 221.) The execution in that case having been returned unsatisfied, a creditor's bill was filed, and a receiver appointed, to whom Lewis was compelled to make a general assignment of his property, choses in action, etc. On the 6th of April, 1881, a suit was commenced by the assignee against Joseph Naphtaly and Edward Hyams to recover damages from them as co-conspirators with Lewis in the frauds for which judgment had been rendered against him. The defendants in these suits severed in pleading. In the suit against Hyams two trials were had, in the second of which a verdict was found against him, and judgment entered October 13, 1883, for the sum of $78,400 and costs, taxed at $328. The suit against Naphtaly was not brought to trial. The execution against Hyams was returned *nulla bona.* On the 31st of October, 1883, a stipulation was signed by the attorney for the assignee, agreeing that the verdict and judgment rendered and entered as against Hyams should be vacated and set aside, and that the action as against him should be dismissed. An order to that effect was entered on the same day. On the 10th of November, 1883, the attorney for the assignee filed a consent that the suit against Naphtaly should be dismissed, and an order to that effect was duly entered. On the same day the assignee, or his attorney, received from Hyams the sum of $30,650, and from Naphtaly the sum of $20,000. Contemporaneously with the filing of the stipulation and entry of the

order in the *Hyams Case*, (viz., October 31, 1883,) but, it would seem, after the payment of the money by him, an agreement was entered into between him and the assignee, or his attorney, as follows:

"*Herman Shainwald, Assignee, etc.*, v. *Joseph Naphtaly and Edward Hyams.*

"It is understood and agreed by us, and each of us, that the money paid to the plaintiff in the above-entitled case is paid on behalf of the defendant Hyams to reimburse the plaintiff for the costs, expenses, disbursements, and attorney and counsel fees paid and incurred by him in the above-entitled action, and that none of it is paid or received in payment or satisfaction or on account of any claim, demand, or cause of action set forth or alleged in the plaintiff's complaint in the above-entitled action; and that the parties paying said moneys hereby renounce all claims, right, and interest of, in, and to all of the same, and forever renounce and disclaim all rights and causes of action for the same, and hereby acknowledge, admit, confess, and declare that they, and each of them, have received not only a good and sufficient, but adequate and full, consideration for said moneys, and all of the same, from the plaintiff in the above-entitled action.                    [Signed]        HYAMS BROS.
                                                        "WILLIAM HYAMS."

On the 10th of November, 1883, the date of the order discontinuing the suit against Naphtaly, a similar agreement or declaration was signed by him, as follows:

"*Herman Shainwald, as Assignee, etc.*, v. *Joseph Naphtaly and Edward Hyams.*

"It is understood and agreed by me that all the money paid to the plaintiff in the above-entitled action is paid on behalf of the defendant Naphtaly to reimburse the plaintiff for costs, expenses, disbursements, and attorney and counsel fees paid and incurred by him in the above-entitled action, and that none of it is paid or received in payment or satisfaction or on account of any cause of action set forth or alleged in the plaintiff's complaint in the above-entitled action; and that the said Joseph Naphtaly, the party paying said moneys, hereby renounces all claim, right, and interest of, in, and to all of the same, and forever renounces and disclaims all rights and causes of action for the same, and hereby acknowledges, admits, confesses, and declares that he has received not only a good and sufficient, but adequate and full, consideration for said moneys, and all of the same, from the plaintiff in the above-entitled cause.

"*San Francisco, Nov. 10, 1883.*
    [Signed]                                            "J. NAPHTALY."

On the 19th of December, 1883, the counsel for Harris Lewis made a motion to the court for an order directing the clerk to enter satisfaction of the judgment obtained against Lewis on the ground that the payments by Hyams and Naphtaly, co-conspirators with Lewis, constituted a satisfaction of the whole tort for which the plaintiff had obtained judgment against Lewis. This motion the court, after hearing elaborate arguments, denied.

The same point is relied on as a defense in the present suit, brought upon the original judgment against Lewis. It is urged by the attorney for the plaintiff that the question was finally passed upon by the court on the hearing of the motion to enter satisfaction of the original judg-

ment; that it is, therefore, *res adjudicata*, and final and conclusive upon the court, and upon the parties to this suit.` This question it is not material to consider, for I am still of opinion that my decision denying the motion was correct; but I may observe that, if I were satisfied that it was incorrect, I should not hesitate so to declare in deciding this suit, and that I should not, feel bound, on the ground of a previous ruling, which I recognized as erroneous, to repeat the same error in this suit, and to enter a judgment which I believe should be reversed on appeal. Assuming, therefore, that the payments in question did not amount in law to a satisfaction of the judgment obtained against Lewis, or an absolute release to them from further liability under it, the question arises, for what sum should judgment be entered against him in the present suit? In ordinary cases the payment by one or more of several tortfeasors and co-conspirators in the commission of a wrong, after suit brought and judgment rendered, is a payment on account of and in satisfaction, in whole or in part, of the cause of action on which the suit is founded, unless otherwise intended or agreed. This inference the attorney for the assignee has attempted to repel by obtaining from the parties a declaration that the moneys were paid by them to reimburse the assignee for costs, disbursements, expenses, and counsel fees in the suit brought against them, and not on account or satisfaction of the cause of action on which it was brought; and that they have received full, adequate, and good consideration for the moneys so paid. But are these declarations and agreements on the part of Hyams and Naphtaly to be received by the court as final and conclusive, and as precluding any inquiry into the true nature and effect of the transaction? It is true that the declarations and agreements state that no part of the money was paid in satisfaction or on account of the claim, demand, or cause of action on which suit had been brought. If this be true, the judgment against Hyams remained unsatisfied, in whole or in part, and the cause of action against Naphtaly continued intact and unimpaired. And yet, on the very day these declarations and payments were made, the judgment against Hyams was vacated and set aside by consent, and the case dismissed, and the suit against Naphtaly discontinued. Hyams and Naphtaly admit that they have received full and adequate consideration for the moneys paid by them. It is obvious that that consideration was the abandonment and dismissal of the proceedings against them, and no other. I hardly think the attorney for the assignee would have felt himself at liberty, under the circumstances, to commence new suits upon the old cause of action, (even if the statute of limitations had not run against them,) and to aver that the moneys received by the assignee had been paid as a kind of gratuity to reimburse the assignee for expenses and counsel fees, and that the original cause of action remained unsatisfied in whole or in part. The statements, therefore, of Hyams and Naphtaly, that the large sums of money paid by them were paid to reimburse the assignee for expenses, etc., and not on account of the cause of action sued on, must be wholly disregarded. They were paid in consideration of the abandonment of the suits brought against them and their discharge

from further liability. They were received by the assignee, not as a personal gratuity to him, but as representing the creditors, and in part satisfaction of the damages sustained by them by reason of the fraudulent conspiracy into which Hyams and Naphtaly, with Lewis and others, had entered. The sums thus collected were assets of the estate belonging to the creditors whom he represented, and distributable among them, after deducting the amount of reasonable and necessary expenses, disbursements, and counsel fees, which might be allowed by the court. It may incidentally be observed that no accounts were filed by the assignee until April 17, 1888, and then upon the order of the court, and on motion of one of the bankrupts; nor has any sum whatever been distributed among the creditors.

In actions on torts the plaintiff may have several judgments, but only one satisfaction. The amounts paid by Hyams and Naphtaly were in part satisfaction of the tort committed by all the conspirators. They should, therefore, be deducted from the original judgment entered against Lewis. It appears that the receiver of the estate of Harris Lewis, appointed by the court, has also collected and received on account of the judgment recovered against Lewis the sum of $11,919.63, and that $150 has been allowed as counsel fees. Whether this sum remains in the hands of the receiver is not shown. As it was collected under the judgment against Lewis or the assignment by him made to the receiver, it seems clear that the net amount paid to the receiver, after deducting the counsel fee allowed by the courts, and other reasonable and necessary expenses incurred in collecting it, should be credited on the judgment against Lewis. What the total amounts collected by the receiver have been, and what the net amounts to be applied in part satisfaction of the judgment should be, the court cannot now say, as the receiver has not made any report or rendered any account to the court since December 15, 1885.

In the bill filed in the present case a writ of *ne exeat republica* is prayed for. This cannot be granted, for many reasons. Among others may be mentioned: *First.* The object and scope of the bill is to keep alive and renew the judgment heretofore rendered against Lewis in suit numbered 221, and to prevent the statute of limitations from becoming a bar to its enforcement. The practical operation of the decree to be rendered is to give new vitality for a period of five years to the former judgment, which is about to become inoperative by lapse of time. In the present suit no additional or affirmative relief can be granted beyond that afforded and adjudged in the judgment on which suit is brought. In that suit a writ of *ne exeat republica* was not awarded. *Second.* The bill alleges upon information and belief that the defendant, unless restrained, will and intends to leave and depart from and out of the state of California, and from out of the jurisdiction of this court. This averment is denied by the answer. No proofs in support of it are produced. Section 717, Rev. St., provides "that no writ of *ne exeat* shall be granted unless a suit in equity is commenced, and satisfactory proof is made to the court or judge granting the same that the defendant designs quickly to depart from

the United States." *Third.* A writ of *ne exeat* was granted in the suit numbered 231, which was a creditor's bill, filed in aid of the original judgment in suit No. 221. The decree in suit No. 231 was rendered May 20, 1881. The defendant gave bonds, and the writ was discharged, and the defendant released from custody on December 9, 1881. The defendant has thus been under bonds not to leave this state for more than seven years. During all that time he has remained within the jurisdiction of this court. The writ of *ne exeat* is in its nature a temporary and provisional remedy. It is not intended to operate as a perpetual and life-long restraint upon the defendant's freedom of movement. To grant it in this suit (if the court had power to do so) for an indefinite period would be equivalent to committing the defendant to jail, the jail limits being the boundaries of the northern district of California. An injunction may issue, not as prayed for in the bill, but as granted in the original judgment on which this suit is founded. The counsel for defendant may draft and submit a decree in accordance with this opinion. He may also take such steps as he may be advised to compel the receiver to report the sums collected by him from the estate of Harris Lewis under the judgment rendered against him or the assignment executed by him to the receiver, and also the sums paid out by him for expenses, etc., for collection, to the end that the amount to be credited to Lewis on the judgment against him may be ascertained and liquidated. These accounts, as well as those of the assignee, should be closely scrutinized. The court cannot avoid noticing that the total amount of debts in the bankrupt's schedule is stated to be about $44,257.25. The amount of debts proved is $29,770.73. The sums received by the assignee and receiver amount to at least $62,419.63, no part of which has been distributed to creditors.