Maria Andersen, Appellee, v. Peter Andersen, Appellant.

Gen. No. 42,237.

Heard in the third division of this court for the first district at the April term, 1942. Opinion filed June 24, 1942.

LUTHER M. LEWIS and JOHN H. ROGERS, both of Chicago, for appellant.

DANIEL A. COVELLI, of Chicago, for appellee; ROBERT J. COLLINS, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

In a complaint filed in the circuit court of Cook county on October 14, 1941, Maria Andersen, plaintiff, represented that she married Peter Andersen, defendant, at Chicago on October 18, 1936; that two children were born of the marriage, Gloria, four years of age, and Allen, three years of age; that on September 10, 1941, he struck her on the face; that on October 7, 1941, he wilfully deserted and absented himself from her without any reasonable cause and continued to absent himself without fault on her part; that he was employed by the Wanzer Dairy Company, where he earned $49.50 a week; that he is a strong, healthy able bodied man, presently employed and well able to maintain

and support his family; that she has no separate property or any source of income whatever, and is wholly dependent upon him for support and maintenance. The complaint further alleged that "the defendant, Peter Andersen, has advised the plaintiff that he intends to leave the jurisdiction of the State of Illinois to go to San Francisco, California, and that unless said defendant is required to post a *ne exeat* bond, this plaintiff, with good reason, fears that he will depart the jurisdiction of this State." Plaintiff prayed that defendant be required to make suitable provision for the separate maintenance and support of plaintiff and the children, suitable allowance for her necessary expenses in conducting the suit, for attorney's fees, and for her support and maintenance during the pendency of the suit; that a writ of *ne exeat* issue requiring defendant to post a bond in the amount of $1,000; that the writ issue without notice to the defendant, and that the bond required of plaintiff be her individual bond in the sum of $100. Plaintiff signed and swore to the complaint. On October 14, 1941, the day the complaint was filed, the court ordered that a writ of *ne exeat* issue without notice requiring the defendant to "post a bond in the sum of $1,000" and that plaintiff "post a complainant's bond instanter in the sum of $100 without surety."

A writ of *ne exeat republica* was issued on October 14, 1941, and directed the sheriff to summon the defendant to answer the complaint on the first Monday of November, 1941, and to give bail in the sum of $1,000, in the absence of which the defendant was to be committed to the common jail of Cook county to abide the further orders of the court. The writ was served on the day it was issued and the defendant was arrested. Failing to give bond, he was lodged in the County Jail. On October 16, 1941, he was brought from the County Jail to the court room so that he could be present on the hearing of a motion by plain-

tiff for temporary alimony and attorney's fees. On that day the court entered an order reciting that because defendant was in custody of the sheriff in the County Jail, the motion for alimony and attorney's fees be "continued to the date upon which the court shall hear the motion of the defendant for approval of the bond required under the *ne exeat* writ without further notice." On November 27, 1941 defendant filed a verified petition stating that since October 14, 1941 he had been confined in the County Jail under the writ of *ne exeat*; that he had been unable to employ counsel or to perform his duties as a dairy employee; that up to the time of being taken into custody under the *ne exeat* writ, he had been for approximately 14 years an employee of the Sidney Wanzer Dairy Company; that he was a member of the Inside Dairy Workers Union Local No. 754; that "he has no intention, nor has he ever had any intention or desire to leave the jurisdiction of this Court or to in any way absent himself or dodge the issue of these proceedings; that he has been a steady worker and is well able to care and provide for his family." He prayed that he be allowed to make a showing before the court with regard to his ability to provide for his family, and concerning the statement that he had no intention of leaving the jurisdiction of the court, that the writ of *ne exeat* be quashed, and that he be given leave to answer the complaint. The hearing on the motion to quash the writ of *ne exeat* was set for November 28, 1941, at which time it was continued to December 12, 1941. It was then continued to December 15, 1941, at which time the defendant filed what he termed an "additional motion to quash the writ of *ne exeat*." The grounds specified in this motion are (1) that the affidavit of plaintiff on which the writ was granted was not in accordance with the law or sections 1, 5 and 8 of chapter 97, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 109.439, 109.442, 109.445]; (2) that the affidavit

was merely a part of the complaint and was not in accordance with sections 1, 5 and 8 of chapter 97; (3) that the writ was granted on a showing of conclusions and not of facts; (4) that the bond given by plaintiff was not sufficient and was not in compliance with section 5, chapter 97, Ill. Rev. Stat. 1941; (5) that neither the complaint or affidavit contained sufficient allegations of fact to warrant the issuance of the writ; (6) that "the facts in this cause do not warrant the granting and issuance of a good writ of *ne exeat* in this cause"; (7) that the bond fixed "is unreasonable and that the defendant is unable to procure said bond." In support of his motion defendant filed the following affidavit:

"Peter Andersen being first duly sworn on oath deposes and says that he is the defendant in the above entitled cause and states that in the afternoon of the 7th day of October, 1941, defendant was called on the telephone at his place of employment with Sidney Wanzer and Sons Dairy Company by his wife, Maria Andersen, plaintiff above named who asked him to come home immediately. Affiant, pursuant to said telephone call, left his work and upon arriving home was confronted with police officers from the Stock Yards Station of the City of Chicago, his wife and her mother who shared the apartment with defendant and his family; that he was then and there accused of stealing from a cedar chest in the household the sum of Three Thousand Dollars ($3,000.00) which said Three Thousand Dollars ($3,000.00) the mother-in-law contended was hers; affiant states that upon the insistence of his wife and her mother he was arrested by the officers and taken to jail; that a disorderly conduct charge was placed against him, his fingerprints taken and he was also taken to the Lie Detector Laboratory by police officers of the City of Chicago and subjected to the lie detector test; that said test showed negative and that after a checkup on his fingerprints with those on the

cedar chest he was taken to the court presided over by Judge Thomas Green and discharged; affiant states that during this investigation and examination he was held in jail for two days before his discharge; that after said discharge affiant returned to his place of employment with Sidney Wanzer and Sons Dairy Company; affiant further states that unknown to him on the 14th day of October, 1941 his wife caused to be filed in the Circuit Court of Cook County her complaint against this defendant for separate maintenance and that in conjunction with her complaint for separate maintenance she asked of the court that a writ of *ne exeat* issue against the defendant alleging that he was about to leave the State of Illinois and go to California; that the court granted said writ and fixed defendant's bond in the sum of One Thousand Dollars ($1,000.00); that on the afternoon of the 15th day of October, 1941 affiant states that he was arrested by a deputy sheriff of Cook County while at work at his place of employment at Sidney Wanzer and Sons Dairy Company; that said officer placed him in the County Jail where he has remained on account of his inability to make bond. Affiant further states that a few days after his incarceration in the County Jail he was taken into the office of John J. Phillips, one of the assistant state's attorneys in the Criminal Court Building in the City of Chicago and was again accused by his wife, the plaintiff herein, and his mother-in-law of having stolen the Three Thousand Dollars ($3,000.00) from the cedar chest heretofore mentioned; that after a thorough interrogation and examination by said Assistant State's Attorney John J. Phillips the said John J. Phillips dismissed their complaint and discharged this affiant from further consideration in reference to the alleged theft of the said Three Thousand Dollars ($3,000.00); affiant further states that he did not take the said Three Thousand Dollars ($3,000.00), nor did he have any knowledge of either the plaintiff herein or her

mother ever having Three Thousand Dollars ($3,000.-00) either in the house or in any other place whatsoever. Affiant further states that the affidavit upon which the writ of *ne exeat* was granted and issued out of this court is false and untrue and without any foundation whatsoever; that all the representations and allegations made therein in reference to this defendant stating to anyone that he was going to leave the State of Illinois and go to California are absolutely false and untrue and made with a malicious intent on the part of plaintiff, she well knowing the same to be untrue and false; affiant further states that he has been continuously employed for more than thirteen (13) years last past by the Sidney Wanzer and Sons Dairy Company in the City of Chicago, that he has no intention whatsoever of giving up his employment and leaving the State of Illinois or in any way placing himself beyond the jurisdiction of this court; that this affiant is advised by his employers that his job is open and they are anxiously awaiting his return to same upon his discharge from the County Jail where he is now in custody; affiant further states that he has not done any act or made any move of any kind to warrant plaintiff or any other person in saying that he was about to leave the State and placing himself beyond the jurisdiction of this court; that he had not drawn his wages from the Sidney Wanzer and Sons Dairy Company that were due at the time of his arrest; that he has not removed any of his clothing or personal effects or made any efforts to remove his clothing, his personal effects or any property of any kind that he may have beyond the jurisdiction of this court and that all his clothing and effects and property of every kind owned by this defendant to the best of this affiant's knowledge are still in the home occupied by his family and his mother-in-law as aforesaid. Affiant further states that his bond in this case was fixed at One Thousand Dollars ($1,000.00); that he has caused to be

made in his behalf many efforts to give bond for his release and that on account of the unwarranted hatred, malice and unreasonableness of plaintiff and her attorney towards affiant he has been unable to comply with their requirements in the giving of said bond." Defendant appeals and asks that the order wherein the court refused to quash the writ of *ne exeat republica*, be reversed and that the writ be quashed.

In American practice the writ of *ne exeat republica* is a process in chancery and in aid of the chancery jurisdiction of the court, issued upon cause shown, to restrain a party from leaving the State until bail be given to perform the decree of the court. Where not otherwise provided by statute, it is governed by the same principles that apply in England to the writ of *ne exeat regno*, which was a writ issued to restrain a person from leaving the Kingdom. However, sec. 1, ch. 97, Ill. Rev. Stat. 1941, provides that it shall not be necessary to authorize the granting of the writ of *ne exeat republica* that the applicant "should show that his debt or demand is purely of an equitable character, and only cognizable before a court of equity." It is a remedy of great severity, and is applied to private rights with caution. To warrant the issuance of the writ there must be a probable or threatened departure of the defendant from the State or the country, with intent to evade the jurisdiction. Section 5 of ch. 97, Ill. Rev. Stat. 1941, provides that "no writ of *ne exeat* shall be granted but upon complaint or petition filed, and affidavit to the truth of the allegation therein contained." This section requires that the court or judge "shall also cause to be taken of the plaintiff before the writ shall issue, bond with good and sufficient surety, in such sum as the court or judge shall deem proper, conditioned that the said plaintiff will prosecute his complaint or petition with effect, and that he will reimburse to the defendant such damages and costs as he shall wrongfully sustain by occasion of the

said writ or any alias or pluries writ. If any defend-
ant to any such writ of *ne exeat* shall think himself
aggrieved, he may bring suit on such bond; and, if,
on trial it shall appear that such writ of *ne exeat* was
prayed for without a just cause, the person injured
shall recover damages, to be assessed as in other cases
on penal bonds.'' Section 10 of the same act provides
that on the return of the writ of *ne exeat*, the court shall
proceed therein as in other cases in chancery. Section
11 provides that nothing contained in section 10 shall
prevent the court from proceeding at any time to de-
termine whether the writ ought not to be quashed. Sec-
tion 12 requires that the Civil Practice Act shall apply
to all proceedings under the *ne exeat* act, except as
otherwise provided in the latter act.

It will be observed that section 5 of the *ne exeat* act
requires that the court or judge shall take or cause to
be taken of the plaintiff ''before the writ shall issue,
bond with good and sufficient surety, in such sum as the
court or judge shall deem proper, conditioned that
the said plaintiff will prosecute his complaint or peti-
tion with effect, and that he will reimburse to the de-
fendant such damages and costs as he shall wrongfully
sustain by occasion of the said writ or any alias or
pluries writ.'' This section does not give any discre-
tion to the court to waive the giving by the plaintiff
of a bond with good and sufficient surety in such sum
as the court shall deem proper. Contrast section 5
of the *ne exeat* act with sec. 9, ch. 69, Ill. Rev. Stat.
1941 [Jones Ill. Stats. Ann. 109.357], (the Injunctions
Act) wherein the legislature has authorized the court
to waive the requirement that the plaintiff shall give
a bond. Had the legislature intended to vest the court
with a discretion to excuse the plaintiff from giving
a bond with sufficient surety, it would have manifested
such intention by appropriate language. In Section 5,
however, the legislature has clearly stated that the
court shall take or cause to be taken of the plaintiff

before the writ shall issue, a bond with good and sufficient surety. In the case at bar there was no pretense of complying with the statute. In fact, plaintiff was excused from filing a bond "with good and sufficient surety" and was permitted to file her individual bond. This was a clear violation of the statute, and on such violation being called to the attention of the court, the writ of *ne exeat republica* should have been quashed. Moreover, a plaintiff's bond in the penal sum of $100 would hardly "reimburse the defendant such damages and costs as he shall wrongfully sustain by occasion of the said writ," as contemplated by sec. 5, ch. 97, Ill. Rev. Stat. 1941.

We are of the opinion that the verified complaint does not contain sufficient allegations to warrant the issuance of the writ of *ne exeat republica*. Paragraph 7 of the complaint states that the defendant "has advised plaintiff that he intends to leave the jurisdiction of the State of Illinois and go to San Francisco, California, and that unless said defendant is required to post a *ne exeat* bond, this plaintiff with good reason fears he will depart the jurisdiction of this State." This is the allegation upon which plaintiff bases her prayer for the writ. Plaintiff does not say when he "advised" her that he intended to leave the jurisdiction of Illinois, nor where he made such alleged statement, nor does she indicate whether his going to California was a temporary departure, or whether he intended to stay there. Her allegation that unless the defendant "is required to post a *ne exeat* bond, this plaintiff with good reason fears that he will depart the jurisdiction of this State" is a mere conclusion. If she feared that he intended to depart from the State with intent to evade the jurisdiction of this State, she should set up the ultimate facts upon which such fear is based. It will be observed that section 8 of the *ne exeat* act states that after a defendant apprehended under such a writ gives bond "no temporary

departure from the State shall be considered as a breach of the condition of the said bond, if he shall return before personal appearance shall be necessary to answer or perform any judgment.'' This provision is a recognition by the legislature of the fact that in a republic like ours it is not uncommon for people to travel out of the State with the intention of returning.

It is interesting to note that plaintiff alleges that the defendant wilfully deserted her on October 7, 1941, yet, the complaint contains no allegation that he at any time neglected to support her or their children. Under the rule that a pleading is taken most strongly against the pleader, the reasonable inference is that defendant did support his wife and children. It will be observed that the day defendant is accused of deserting plaintiff is the same day when, according to his affidavit, he was arrested at the instance of plaintiff and her mother. Outside of the prayer for the writ of *ne exeat republica*, the relief asked by plaintiff is that defendant be compelled to make proper and suitable provision for the maintenance and support of plaintiff and their children. According to the allegations of the complaint, they are living separate and apart without any fault on the part of the plaintiff, but she does not claim that he is not supporting his family.

Section 11 of the *ne exeat* act contemplates that the defendant may at any time request the court to determine whether the writ ought not to be quashed or set aside, and section 12 requires that the provisions of the Civil Practice Act shall apply to all proceedings under the *ne exeat* act, except as otherwise provided in the latter act. The motion of defendant to quash the writ of *ne exeat* was supported by an affidavit, which, if true, constituted ample grounds for the allowance of such motion. The order disposing of the motion indicates that no evidence was heard and that the decision was arrived at from the arguments of counsel. Clearly the affidavit presented statements of ultimate

fact, which, if not true, should have been traversed. No counter affidavits were filed by plaintiff. We must assume from the record that the argument in opposition to defendant's motion to quash raised points as to the sufficiency of defendant's motion and supporting affidavit. In this state of the record we are required to assume as true whatever is well pleaded. The affidavit charged that plaintiff and her mother made an unfounded charge against him that he stole $3,000, which was the property of his mother-in-law; that he was arrested at the instance of his wife and mother-in-law; that he was subjected to a grilling by the police and State's Attorney; that his fingerprints were taken; that he was subjected to a lie detector test; that he was then charged with disorderly conduct; that when confronted with this charge in the municipal court he was exonerated and discharged; that the State's Attorney likewise exonerated him; that he never at any time intended to leave the jurisdiction of the courts of this State; that he had been employed continuously for 13 years for Sidney Wanzer & Sons Dairy Company, that he had at all times supported his family; and that he had not removed any of his clothing or personal effects from his home where his wife and children and mother-in-law reside. If these allegations be true, the action of plaintiff in having him apprehended under a writ of *ne exeat* is reprehensible and an abuse of that writ. According to defendant's affidavit, he was employed by the same firm for 13 years and was arrested by the police while actually at work. After being discharged in the municipal court he returned to his employment with the Sidney Wanzer & Sons Dairy Company. The actions of this defendant certainly do not indicate any intention to leave this State in order to defeat the plaintiff in any of her rights. On October 14, 1941 he was lodged in the County Jail, and so far as the record shows, is still there. We are informed by the attorney for plain-

tiff, however, that on April 28, 1942 the trial court reduced the *ne exeat* bond required by defendant to the sum of $400, and that the defendant is now at liberty under such bond. Apparently, the only effect of plaintiff's action in procuring the issuance of the writ of *ne exeat* has been to keep her husband in jail for more than 6 months. Consequently, plaintiff and the children have been deprived of the support and the children of the companionship of defendant during that period, and he has been deprived of his liberty.

Because of the views expressed, the order of the circuit court of Cook county entered on December 17, 1941, is reversed and the cause remanded with directions to quash the writ of *ne exeat* and for further proceedings not inconsistent with this opinion.

*Reversed and remanded with directions.*

HEBEL and KILEY, JJ., concur.