Elkay Steel Co. *v.* Collins, Appellant.

Argued March 20, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Leonard M. Mendelson,* with him *David Silverblatt,* and *Charles D. Coll,* for appellant.

*John A. Metz, Jr.,* with him *Guy L. Warman,* and *Metz, Cook, Hanna & Kelly,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 2, 1958:

This appeal presents two questions: (1) is the writ of ne exeat[1] available in Pennsylvania, and (2), if it is, do the instant facts warrant its issuance and continuance? The use of the writ of ne exeat is one of first impression in an appellate court in this Commonwealth.

Elkay Steel Co., appellee, instituted an equity action against M. Dennis Collins, appellant, and Rena R. Collins, his wife, wherein it was alleged that the Collins, by false and fraudulent representations and by forgeries, had secured from Elkay $91,015, a part of which—approximately $30,850—the Collins had returned, but the balance of which—approximately $60,-165 and the profits realized therefrom—the Collins still retained. Elkay sought the aid of the equity court for an accounting and payment over to it of the balance of the money by the Collins. That action is still pending.

Coincident with the institution of this equity action,[2] Elkay petitioned for the issuance of a writ of ne exeat alleging: (1) that the Collins' activities had been and were such that upon service upon them of the complaint in the equity action the Collins would leave Pennsylvania and the jurisdiction of its courts to avoid compliance with any decree rendered in the equity action; (2) that unless the Collins were required to post a bond conditioned on their continued presence in Pennsylvania, any decree which might be rendered in the equity action would be rendered non-effective by

---

[1] Termed in England "Ne Exeat Regno", in colonial days in America "Ne Exeat Provincia", today frequently "Ne Exeat Republica".

[2] Ne exeat is not an action, but ancillary to an equity action: *Cable v. Alvord*, 27 Ohio St. 654; *State ex rel. Cazier v. Turner*, 145 Wis. 484, 130 N.W. 510.

their departure from the Commonwealth; (3) that unless prevented by the issuance of the writ, the Collins' misappropriation of Elkay's money would be finally consummated. The Court below, ex parte, directed the issuance of a writ of ne exeat.[3]

The Collins filed preliminary objections to the equity complaint and an answer to the ne exeat petition. They then filed petitions to quash the writ. After hearing, the court below refused to quash the writ. Appellant then withdrew his preliminary objections and consented in writing to the entry of a default decree against him in the equity action. Elkay, however, did not enter a default decree. Appellant then presented another petition to quash the writ of ne exeat which the court below refused. Appellant then took this appeal.

The writ of ne exeat originated in England and, as appellant well states, applied "only to ecclesiastics, whose intercourse with the papacy it was designed to impede"; it was employed by the Crown to restrain and prevent the departure from the realm of such persons, whether subjects or foreigners. "Its use subsequently was sometime between the reigns of John and Edward

---

[3] The actual order of the court "enjoined and restrained [the Collins] from departing out of the Commonwealth of Pennsylvania without leave of this court pending satisfaction of the decree to be made in this action or until further order of this court. AND IT IS FURTHER ORDERED that a Writ of Ne Exeat shall issue out of and under the seal of this Court directed to the Sheriff of Allegheny County, Pennsylvania, to restrain [the Collins], and each of them, . . . , and to compel them and each of them to post bond in the sum of $11,000 [later changed to $25,000] to secure their and each of their compliance with this Decree". Ne exeat is obtained ex parte usually and may be applied for at any stage of the equity action: *Carnes v. Carnes*, 138 Ga. 1, 74 S.E. 785; *Samuel v. Wiley*, 50 N.H. 353; *Rice v. Hale*, 5 Cush. (Mass.) 238.

I, as a high prerogative writ, founded on the duty of the subject to defend the king and his realm. . . . Its original use, however, as a prerogative writ was applied only 'to great political objects and purposes of State for the safety or benefit of the realm': 3 Story on Equity Jurisprudence, sec. 1913".[4] There were two forms of the writ, one applicable to clergymen, the other to laymen. Lord Coke deemed it part of the Crown's prerogative at common law, not dependent on statute, *"pro bono regis et regni"*: 2 Co. Inst. 51.[5]

In the late sixteenth century, the practice arose of using ne exeat for the enforcement of private rights. The use of the writ in aid of private persons supposedly arose from custom: *Ex Parte Brunker,* 3 P. Wms. 313, 24 Eng. Rep. 1079. In *Flack v. Holm,* 1 Jac. & Walk. 405, 413, 414, Lord Eldon said, "How it happened that this great prerogative writ, intended by the laws for great political purposes and the safety of the country, came to be applied between subject and subject, I cannot conjecture"; nevertheless he concluded that "the law is settled, that in the case of an equitable demand, when the person against whom it is made is going out of the Kingdom, you may, by the King's writ of ne exeat regno, prevent him from going, the object being to oblige him to give security to abide the decree". The use of this writ in private litigation has

---

[4] Quoted from an exceptionally fine statement of the historical development of the writ by Judge WINNET in *Lit Brothers v. Rubin,* 44 D. & C. 110, 111, 112.

[5] *Ex parte Brunker,* 3 P. Wms. 313, 24 Eng. Rep. 1079; *Flack v. Holm,* 1 Jac. & Walk. 405, 413, 414; 3 Story, Equity Jurisprudence (14th ed.) §1911.

446

received recognition both in England[6] and the United States.[7]

The writ's function in private litigation was well stated in *Andersen v. Andersen*, 315 Ill. App. 380, 43 N.E. 2d 176, 179: "In American practice the writ of ne exeat republica is a process in chancery and in aid of the chancery jurisdiction of the court, issued upon cause shown, to restrain a party from leaving the State until bail be given to perform the decree of the court. Where not otherwise provided by statute, it is governed by the same principles that apply in England to the writ of ne exeat regno . . ." The writ confines a person to the limits of the jurisdiction of the court until he has satisfied the plaintiff's claim or given bond

---

[6] In *DeCarriere v. DeCalonne*, 4 Ves. Jr. 577, 590, 591, it was said: "An application for the writ of ne exeat regno is to the discretionary power of this Court, acting beyond the limits of the common law and applying a remedy certainly in its origin not distinctly applicable to private transactions between subject and subject". In *Coglar v. Coglar*, 1 Ves. Jr. 94, a writ of ne exeat was granted at the suit of a wife to prevent her husband from leaving the country until her suit for alimony was determined, the issuance of the writ being in "aid of the Ecclesiastical Court". See also: *Evans v. Evans*, 1 Ves. Jr. 96; *Sir Jerom Smithson's Case*, 2 Ven. Rep. 345

[7] *D. Ginsberg & Son, Inc. v. Joseph Popkin*, 285 U. S. 204, 76 L. Ed. 704, 52 S. Ct. 322; *MacDonough v. Gaynor*, 18 N.J. Eq. 249; *Cable v. Alvord*, 27 Ohio St. 654; *Williams v. Williams*, 3 N.J. Eq. 130; *Cohen v. Cohen*, 319 Mass. 31, 64 N.E. 2d 689; *Brown v. Haff*, 5 Paige (N. Y.) 235; *Rhodes v. Cousins*, 6 Rand. (27 Va.) 188; *Bonesteel v. Bonesteel*, 28 Wis. 245; *Lamar v. Lamar*, 123 Ga. 827, 51 S.E. 763; *Adams v. Whitcomb*, 46 Vt. 708; *Gresham v. Peterson*, 25 Ark. 377; 29 Harvard L. Rev. 206; 19 R.C.L., Ne Exeat, §51; 118 Am. St. Rep. 989; 3 Story, Equity Jurisprudence (14th ed.) §1919; 65 C.J.S., Ne Exeat, §1; 38 Am. Jur., Ne Exeat, §§1, 2; 8 Temple L.Q. 520. "It is frequently said to be analogous to the capias at common law": 20 Standard Encyclopaedia of Practice, p. 291.

for the satisfaction of the decree of the court: 38 Am. Jur., Ne Exeat, §1. See also: *Johnson v. Clendenin*, 5 Gill & J. 463 (Md.); 20 Standard Encyclopaedia of Procedure, p. 291.

However, the courts have placed certain definite limitations upon the use or employment of the writ.[8] The claim or demand must be equitable in nature as opposed to a claim or demand based upon contract and actionable at law,[9] but to this rule there are two exceptions: (1) to prevent a husband's threatened departure from the jurisdiction with the intent to evade payment of an alimony decree[10] and (2) where equity will entertain a bill for an account the writ is available if the defendant admits that a balance is due but disputes the amount of the balance.[11] The claim must be for a sum certain which is presently payable.[12] It must be shown that there is "a probable or threatened departure of the defendant from the state or the coun-

---

[8] While in England the writ is treated as a prerogative writ, in this country it is ordinarily considered a writ of right in cases where it is properly grantable: *Samuel v. Wiley*, 50 N. H. 353; *Ex parte Harker*, 49 Cal. 465; *Myer v. Myer*, 25 N. J. Eq. 28; *Lamar v. Lamar*, 123 Ga. 827, 51 S.E. 763; *Adams v. Whitcomb*, 46 Vt. 708; *Gooding v. Reid, Murdock & Co.*, 177 F. 684; 38 Am. Jur., Ne Exeat, §3.

[9] *MacDonough v. Gaynor*, 18 N.J. Eq. 249; *Cable v. Alvord*, 27 Ohio St. 654; *Andersen v. Andersen*, 315 Ill. App. 380, 43 N.E. 2d 176; *Cohen v. Cohen*, 319 Mass. 31, 64 N.E. 2d 689; *Seymour v. Hazard*, 1 Johns Ch., 1 N. Y. Ch. L. Ed. 37; *Moore v. Valda*, 151 Mass. 363, 23 N.E. 1102; 19 R.C.L., Ne Exeat, §6; Beames, Ne Exeat, p. 30.

[10] *Read v. Read*, 1 Ch. Cas. 115; *Lamar v. Lamar*, 123 Ga. 827, 51 S.E. 763; *Cohen v. Cohen*, 319 Mass. 31, 64 N.E. 2d 689, 692, 693.

[11] Cooper, Equity Pleading, ch. 3, pp. 149, 150.

[12] *Williams v. Williams*, 3 N. J. Eq. 130; *De Rivafinoli v. Corsetti*, 4 Paige (N. Y.) 264.

try generally with intent to evade jurisdiction".[13] Lastly, since the writ does act as a restraint on the individual against whom it is issued, it should be granted only in circumstances which clearly warrant it and only with great caution.[14]

Although the use of the writ in early Pennsylvania was "frequent",[15] rarely in modern practice has it been employed.[16] There are only two reported cases involving the writ of ne exeat in Pennsylvania, both of which have been well analyzed in *Lit Brothers v. Rubin,* supra, p. 113: "In Torladé v. Barrozo, 1 Miles (Pa.) 366 (1830) (District Court of Philadelphia), plaintiff, claiming to be the accredited representative of the King of Portugal, applied for the writ of ne exeat to prevent defendant's departure from the United States with archives and documents belonging to his majesty. The court discharged defendant on the ground of his privileges and immunity as chargé d'affaires of a foreign government. The note in the case states that later Chief Justice MARSHALL granted the writ, but defendant had already left the jurisdiction. The other case is Dransfield v. Dransfield, 6 Phila. 143 (1866). The opinion begins by saying: 'This case was a remarkable one, inasmuch as it was the first instance of the issuing of a writ of *ne exeat* by a Pennsylvania Court.' The issuance of the writ was sustained to prevent the de-

---

[13] *Andersen v. Andersen,* 315 Ill. App. 380, 43 N.E. 2d 176; *Reed v. Barber,* 110 Ga. 524, 35 S.E. 650; *Ramsey v. Foy,* 10 Ind. 493; *Yule v. Yule,* 10 N. J. Eq. 138; *Shainwald v. Lewis,* 46 F. 839; *Caughron v. Stinespring,* 132 Tenn. 636, 179 S.W. 152; *Rhodes v. Cousins,* 6 Rand. (27 Va.) 188; 8 Temple L.Q. 520, 527.

[14] 3 Story, Equity Jurisprudence (14th ed.), §1920; *Tomlinson v. Harrison,* 8 Ves. 32; *Ex Parte Bunker,* 3 P. Wms. 313, 24 Eng. Rep. 1079; *Cohen v. Cohen,* 319 Mass. 31, 64 N.E. 2d 689, 692, 693.

[15] Note to *Loewenstein v. Biernbaum,* 8 W.N.C. 163, 164; Rawle, Equity in Pennsylvania, p. 40.

[16] Goodrich-Amram, Civil Practice, §1481(a)-7, p. 16.

fendant from departing the jurisdiction with securities belonging to plaintiff, his wife. The court proceeds on the theory of equitable indebtedness of the husband to the wife". Our recent Rules of Civil Procedure recognize, at least by implication, the present availability of the writ.[17]

Appellant's attack on the availability of the writ is two-fold: that it is in conflict with the Act of July 12, 1842, P. L. 339, §1,[18] and with Art. I, §25 of the Pennsylvania Constitution.

The Act of 1842, supra, provides: "No person shall be arrested or imprisoned on any civil process issuing out of any court of this commonwealth, in any suit or proceeding instituted for the *recovery of any money due upon any judgment or decree founded upon contract, or due upon any contract, express or implied, or for the recovery of any damages for the nonperformance of any contract,* excepting in proceeding as for contempt, to enforce civil remedies, action for fines or penalties, or on promises to marry, on moneys collected by any public officer, or for any misconduct or neglect in office, or in any professional employment, in which cases the remedies shall remain as heretofore". (Emphasis supplied) The main object of this statute was to relieve from imprisonment in all cases where the offense was that of omitting to pay money due on a contract: *Commonwealth ex rel. Di Giacomo v. Heston,* 292 Pa. 63, 68, 140 A. 533; *Ross v. Dever,*

---

[17] "Rule 1481. Civil Arrest Before Judgment, (a) Except in an action for fines and penalties, or *upon a writ of ne exeat,* or as punishment for contempt, a defendant may not be arrested before judgment in an action or proceeding at law or in equity." (Emphasis supplied)

[18] 12 PS §257. Now suspended by Pa. R. C. P. 1481, supra, except as it applies to actions for fines and penalties or writs of ne exeat.

298 Pa. 146, 151, 148 A. 75. The statutory language clearly supports this interpretation. If the equity proceeding to which the writ of ne exeat is ancillary seeks the recovery of money due not on a contractual basis but upon the basis of fraud or a trust relationship, then the statute is not applicable. *Allen et al. v. Pennypacker et al.*, 302 Pa. 495, 498, 153 A. 734. Other jurisdictions have recognized that detention under a writ of ne exeat ancillary to an equity proceeding which is based on fraud or the breach of a legal duty rather than on a contract, express or implied, does not constitute an unlawful imprisonment for debt: *Gooding v. Reid, Murdock & Co.*, 177 F. 684; *Bushnell v. Bushnell*, 15 Barb. (N. Y.) 399; *McNamara v. Dwyer*, 7 Paige (N. Y.) 239; *Brown v. Haff*, 5 Paige (N. Y.) 235; *Dean v. Smith*, 23 Wis. 483; *Ruddell v. Childress*, 31 Ark. 511; *Porteus v. Barton*, 16 Colo. 75; *Gleason v. Bisby*, (N. Y.) Clarke, p. 551; 16 C.J.S., Constitutional Law, §204(3); 65 C.J.S., Ne Exeat, §2. Contra: *Scoggins v. Taylor*, 13 Ark. 380; *Malcolm v. Andrews*, 68 Ill. 100; *Adams v. Whitcomb*, 46 Vt. 708. See also: *Tegtmeyer v. Tegtmeyer*, 314 Ill. App. 16, 40 N.E. 2d 767, cert. den. 317 U. S. 689, 87 L. Ed. 552, 63 S. Ct. 257, reh. den. 322 U. S. 771, 88 L. Ed. 1596, 64 S. Ct. 1272. Where ne exeat issues ancillary to an equity action, as in the instant case wherein the claim is based on fraud rather than contract, it does not run afoul of the statutory prohibition against imprisonment for debt.

Art. I, §25 of the Pennsylvania Constitution provides: "Emigration from the State shall not be prohibited". Appellant's argument that the use of ne exeat violates this constitutional provision is without merit. This provision proscribed any legislative mandate denying the "natural inherent right to emigrate from one state to another that will receive them or to

form a new state in vacant countries or in such countries as they can purchase whenever they think that thereby they may promote their own happiness".[19] The constitutional provision does not, nor was it ever intended to, prohibit the restraint of individuals within the Commonwealth who, either civilly or criminally, commit acts of fraudulent transgression until they have answered for such transgressions. Numerous restraints of this nature have been validated in this state as vital and necessary parts of the administration of justice.[20] The restraint of an individual which results from the issuance of ne exeat is not among the constitutional prohibitions.

Assuming, arguendo, the availability of the writ, appellant contends that the instant facts neither warrant the issuance, nor the continuance of the writ, particularly since appellant has consented to the entry of a default decree against him. In reviewing the action of the court below we do not inquire into the merits of the controversy, but simply determine whether the court below had reasonable grounds upon which to grant and continue the writ or whether palpable legal error exists. An examination of the record reveals the propriety of the action of the court below. Appellee's basis for the issuance of the writ was the imminency of an actual departure from the Commonwealth of the Collins for the purpose of avoiding compliance with the eventual decree in the equity action; the record fully justifies the conclusion that such a threat existed. Furthermore, appellant's willingness to suffer a default judgment did not justify the discharge of the

---

[19] Clause 15, Declaration of Rights, Constitution of 1776.

[20] Writs of Capias ad Respondendum, Special Capias ad Respondendum, Warrants of Arrest, Capias ad Satisfaciendum, Contempts to Satisfy Decrees, etc.

writ.[21] To hold otherwise would permit a fraudulent debtor to admit his guilt and then depart from the jurisdiction of the court with the fruits of his fraud, the very object which ne exeat seeks to prevent.

While there is no doubt that the writ of ne exeat is presently available for use in private litigation its use and employment must be carefully circumscribed within appropriate limits and its issuance exercised with great caution and only in such instances where it clearly and unmistakably applies.[22] In the present circumstances the court below very properly permitted both the issuance of the writ and its continuance.

Order affirmed. Costs upon appellant.

Mr. Justice BELL and Mr. Justice COHEN dissent.

---

[21] Cf: *LeClea v. Trot*, Prec. in Ch. 1750, p. 230.

[22] In *Rhodes v. Cousins*, 6 Rand. (27 Va.) 188, the court, in recognizing the power to issue ne exeat, nevertheless said: "In the exercise of this power, Courts of Equity are very cautious, as it is a strong step, tending to abridge the liberty of the citizen."