Thomas *v.* E. C. Mutter Construction Company, Inc., Appellant.

Argued January 5, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*E. C. Marianelli,* for appellant.

*George B. Ritchie,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, March 13, 1962:

Two questions are herein presented: (1) may a writ of ne exeat issue against an executive officer of a corporation to enforce satisfaction of a money decree entered by the court *only* against the corporation? (2) if the writ may so issue, was its issuance and continuance justified in the instant factual situation?

Enoch H. Thomas, Jr. (Thomas), court-appointed receiver of Skyline Construction Company, instituted an equity action[1] in the Court of Common Pleas of Luzerne County against E. C. Mutter Construction Co., Inc. (Mutter Company), a Rhode Island corporation which maintains a Wilkes-Barre, Pa., office where, as a duly registered foreign corporation, it does business. The decree entered in this action directed entry of a $27,602 judgment for Thomas against Mutter Company.

On July 13, 1961, Thomas petitioned the court below "to direct issuance of a writ of ne exeat",[2] recommending $27,602 bail. This petition set forth entry of the decree against Mutter Company, that E. C. Mutter (Mutter) was the "principal or possibly sole stockholder" of Mutter Company, that Thomas *believed* that "Defendant"[3] was "prepared to quit the jurisdiction for the purpose of defrauding [Thomas] of his rights" and that Thomas' belief was based "upon information received from various Realtors and from personal investigation of 'For Sale' signs placed upon [Mutter Com-

[1] Except that this action involved fraudulent transfers and equitable estoppel, the record reveals little else.

[2] The prayer of the petition did not identify the person against whom the writ was sought.

[3] It is difficult to know to whom "Defendant" refers. The *sole* defendant in the equity action was *Mutter Company*. Paragraph 4, after alleging the threatened departure of "Defendant", alleges that such departure was "without leaving behind *him* sufficient property or other assets to satisfy [Thomas'] just claims." (Emphasis supplied).

pany's] place of business." *Ex parte,* the court directed the issuance of the writ against *Mutter,* not *Mutter Company,* and fixed $27,602 bail. *Mutter Company*—not *Mutter*—answered the petition averring, inter alia, that Mutter Company had no intention of departing from the court's jurisdiction.

In support of Thomas' claim that either *Mutter* or *Mutter Company,* or both, were preparing to leave the jurisdiction *no hearing was held nor testimony taken.* Nevertheless, on July 19, 1961, after Mutter Company's answer was filed, the court directed the issuance of a writ of ne exeat to the sheriff, or other law officer, of Luzerne County, "directing him to arrest [Mutter], President of [Mutter Company], *and all other executive officers of the said corporation,* and place him, them and each of them in the County Jail, unless and until he, they and each of them shall enter into a bond with good and sufficient sureties in the sum of $30,000 . . . conditioned that [Mutter Company] through its executive officers shall satisfy and perform the final decree"[4] (emphasis supplied) or until such executive officers, before leaving the jurisdiction, shall inventory and turn over to a trustee or receiver all assets of Mutter Company.

Two days later, Mutter Company moved to quash the writ. The court refused to quash the writ; from that order *both* Mutter and Mutter Company have taken these appeals.

---

[4] This order is most difficult to understand. One writ had been issued against Mutter not as an executive officer but as an individual. Is this order an issuance of a new writ or the continuance of the other writ? If the former, as seems likely, what is the status of the other writ? Without any averment that executive officers of Mutter Company, other than Mutter, were about to depart the jurisdiction, upon what basis were these other officers included in the writ? These questions remain unanswered on this record.

Ne exeat is a most extraordinary writ. ". . . its use and employment must be carefully circumscribed within appropriate limits and its issuance exercised with great caution and only in such instances *where it clearly and unmistakably applies*": *Elkay Steel Co. v. Collins,* 392 Pa. 441, 452, 141 A. 2d 212. (Emphasis supplied). The area of this writ's restricted use has been historically delineated by the courts and beyond that area ne exeat will not lie.

Ne exeat is exclusively an ancillary writ, ancillary to an action equitable in nature and based upon a claim for a sum certain presently payable. *Ne exeat cannot issue against a person against whom no claim is made and who is not a party in the equitable action.*[5]

The instant writ of ne exeat was issued ancillary to an equity action instituted against *only* Mutter Company upon a claim which Thomas had against that corporate entity. *In that action* neither Mutter nor any of the other executive officers of the Mutter Company, in any capacity whatsoever, were parties nor did Thomas assert against them, or any of them, any claim. The court decree, which established Thomas' claim was entered against Mutter Company alone and not against Mutter or any other executive officer. That decree did not establish any indebtedness owing to Thomas by Mutter or the other executive officers. Under such circumstances, ne exeat did not lie against Mutter or any of the other executive officers.

The court below sought to justify the writ's issuance on two grounds: (1) "The fact is that [Mutter] is the very individual who as the Executive officer of [Mutter Company] committed the acts found fraudulent by the Court upon which the $27,602 decree nisi

---

[5] Cf: *In Re Foster Construction Corporation,* 50 F. 2d 693, aff'd. eo nomine, *D. Ginsburg & Sons v. Popkin,* 285 U. S. 204, 52 S. Ct. 322.

was based"; (2) "The law would be a most puerile thing if the Court was now powerless in any way to prevent that executive officer or any other officer or employee from in any way interfering with the application of the [Mutter Company's] assets to the payment of whatever sum is finally decreed by this Court." Such grounds do not justify the issuance of this writ.

Accepting the court's finding that Mutter committed the fraudulent acts which led the Court to enter the decree against Mutter Company, the fact remains that Mutter and any, or all, of the other corporate officers could have been held personally liable for any fraud which he or they committed in matters concerning the corporation and a direct action against him or them could have been maintained by the party defrauded: *Vierling v. Baxter et al.,* 293 Pa. 52, 55, 56, 141 A. 728; *Jamestown Iron & Metal Co. v. Knofsky et al.,* 291 Pa. 60, 63, 139 A. 611. However, no claim was presented against Mutter or any of these corporate officers, they are not parties to the equitable action to which this ne exeat is ancillary and no decree has been entered against Mutter or any of them. In determining whether ne exeat was available it was of no moment that Mutter's actions—fraudulent as they may have been—constituted the efficient cause of the entry of the decree against the Mutter Company.

The court below mistook the nature of ne exeat. The prevention or restraint of corporate officers from interference with the application of the corporate assets to the satisfaction of a decree entered against the corporation is not and has never been within the purview of ne exeat. The purpose of ne exeat is to confine a person—against whom there is a claim equitable in nature for a sum certain presently payable—within the limits of the court's jurisdiction until satisfaction of that claim or until a bond is given for that purpose. In the absence of any claim whatsoever against Mutter

or any of the other corporate officers in the equity action or any decree entered against Mutter or any of the corporate officers, ne exeat will not lie and should not have been issued against such officers, or any of them.

Moreover, on the posture of this record—where a threatened departure from the jurisdiction is averred but such is denied—ne exeat should not have been issued without having established *at a hearing* that the person or persons against whom the writ was sought had threatened to depart the court's jurisdiction with the intent to defraud the claimant of his rights. When the petition was presented, ne exeat, on the basis of Thomas' *belief*, was issued ex parte; that ne exeat may be, and usually is, issued ex parte is well established: *Elkay*, supra, p. 444, and cases therein cited. However, when the pleadings squarely raised, as in the case at bar, a question of fact as to whether the person or persons against whom the writ was to be issued or, if issued, to be continued were planning to depart the court's jurisdiction with intent to defraud, it then became the duty of the court to resolve that question of fact by the taking of testimony. The burden was on Thomas to prove to the satisfaction of the court that there was a "probable or threatened departure of the defendant from the state . . . with intent to evade jurisdiction": *Elkay*, supra, pp. 447, 448, and cases therein cited. Such proof could only be produced at a hearing wherein both parties would be given full opportunity to present their respective testimony: the law requires no more but certainly no less. *No such hearing was held;* in view of the disputed question of fact on a matter vital to the writ of ne exeat, the failure to hold such hearing is fatal to the continuance of this writ.

Ne exeat "should be granted only in circumstances which clearly warrant it and with great caution": *Elkay*, supra, p. 448, and cases therein cited. Unless the restrictions and limitations historically placed by the

courts on the use and employment of this writ are fully and completely complied with, ne exeat should not issue or, if issued, should not be continued.

Order reversed. Costs on appellee.